168 So. 188

## LUNSFORD v. LUNSFORD.

### 4 Div. 884.

Supreme Court of Alabama.

May 14, 1936.

McDowell & McDowell, of Eufaula, for appellant.

Chauncey Sparks, of Eufaula, for appellee.

FOSTER, Justice.

This is a suit for divorce with a cross-bill for alimony. The complainant and respondent married in 1921, when he was about fifty-three and she was nineteen years of age. He was a bachelor, and was then and continued to be a prosperous farmer. Her father was a tenant on halves with complainant at the time, and the family lived in complainant's house. He had reared a niece and nephew, but they had married and moved off his place. His niece had a son named Alpheus San-ders, who was about five years old when the complainant and respondent married.

The evidence shows, we think, that they lived together as well as people so situated generally do. Each appeared to be kind and considerate of the other. He bought a radio and an automobile, and she drove it, but he did not, and she went when and where she wished, always willing to take him. She did the cooking and ordinary housework.

Mrs. Sanders, his niece, lived not far away, and she and respondent were good friends and frequently visited. Mrs. Sanders continued to be solicitous of and interested in complainant, and her son was very much at home there. They both enjoyed the best of character, and no children came.

Respondent testified that in 1924 and 1932 she had a miscarriage, but there was no corroboration of this evidence. On the other hand, complainant testified he knew nothing of it, and the washerwoman testified to facts which tended to show it did not occur. By 1933 Alpheus was about seventeen, and complainant contracted serious organic heart and liver trouble. His mother noticed that he and respondent, then about thirty-one, seemed to be too fond of each other, as manifested in many small attentions, and finally were seen hugging and kissing. She remonstrated with her son, and he told her nothing was wrong. But later, on December 6, 1933, she saw them, she says, under very suspicious circumstances which were not communicated, however, to complainant at the time. On November 9, 1933, complainant came to be much worse, including high blood pressure, with angina pectoris. On November 12th, he was advised to, and did go to bed and remained there for a few weeks, and until he went to the hospital in Eufaula. Alpheus was often there. Complainant began to take notice of their suspicious conduct, but respondent was always kind to him. He was then about sixty-five years of age, but she says he was always very passionate, and indulged with her practically every night. On December 17, 1933, he went to Dr. Salter's hospital in Eufaula for treatment, and remained there until January 3, 1934. Alpheus and his mother carried respondent to the hospital every afternoon, and she stayed with complainant every night in the hospital, and they came and carried her home the next morning.

His condition improved, and he went home on January 3, 1934, and she said he had intercourse with her that night, and continued to do so as before.

Respondent was delivered of a child the following September 13th. The doctor said it was fully matured. If so, according to the course of nature it should have been conceived about December 13th, or a few days earlier or later. Franks v. State, 26 Ala.App. 430, 161 So. 549. Complainant says that he did not have intercourse with her from the time he was taken sick on November 9th, when he first consulted a doctor, until March 15, 1934. Their testimony from that time on is directly in conflict. When pregnancy began to be manifest, she says he at first seemed to be satisfied, but later became disturbed, in so far as it would affect the descent of his property. That as time passed, he became more disturbed and irritated, but continued his sexual indulgence; that Mrs. Sanders was always cold and seemed to be resentful that respondent had married her uncle, who was her foster parent.

Complainant claims that he did not know for a time that his wife was pregnant, and she claimed it was a tumor, but would not see a doctor. He finally induced her to go to see Dr. Salter one day when she went to Eufaula for her mother and sister, and brought them back to his house. She told him the doctor said she was pregnant and would be delivered in about four weeks, but was confined in less than that time. (This was complainant's evidence.) He then told her it was not his, and that she should be willing to face Alpheus and hear what he had to say. She refused. But he sent for Alpheus, and he accused Alpheus in the presence of his wife's mother and sister, but she would not be present. Since she was not present, what Alpheus said was not offered. She steadfastly denied that Alpheus was responsible, until complainant says she admitted it to him a few days later.

■■■■ He then planned to cause a separation, and in the meantime to provide for her confinement. She says he continued sexual indulgence until one week before confinement. He made arrangements with Dr. Salter, who went for her, and carried her to the hospital. She went to town when complainant made the arrangements. On that trip Dr. Salter, at complainant's instance, obtained from her a written statement that complainant was not the father of her child. She says it was obtained by misrepresenting its contents, and also that any admission in it or elsewhere, if true, was not legal evidence because (1) the legitimacy of her child cannot be questioned, when it is born in wedlock, and (2) a divorce cannot be had on her confession.

The relevancy of the evidence as affecting the legitimacy of the child is very different when that is but a feature of a confession of adultery, when the issue is whether there was such ground for divorce. True, a divorce cannot be rendered on the confession of defendant, section 7413, Code, but when she is contesting the divorce, the statute does not exclude evidence of extra-judicial admissions in corroboration of other proof. Cox v. Cox, 230 Ala. 158, 160 So. 230; King v. King, 28, Ala. 315.

Dr. Salter also testified that she told him Alpheus was the father of the child, and he so stated in making his report for vital statistics. This evidence was admissible under the same principle.

The evidence is full and satisfactory that both parties had good character and standing before this disturbance arose. No other act of impropriety is charged to her. Complainant's evidence shows that he was greatly disturbed by the situation, and as he faced her before the register repeated several times that if she was like she was two years before, he would not take a million for her.

Alpheus Sanders then in Atlanta was examined on interrogatories, and declined to answer them. But counsel were present, and propounded oral questions. He admitted in response to them that he had intercourse with respondent in July, 1933, and in the early part of 1934; but would give no details and refused to sign his depositions.

The witnesses did not appear before the trial judge. He came to the conclusion that respondent was guilty of adultery as charged, and that it was not condoned.

While under such circumstances his finding does not have a presumption which would attach if the witnesses or some of them appeared and testified before him (section 10276, Code; Mink v. Whitfield, 218 Ala. 334, 118 So. 559), we think that he reached the correct conclusion in respect to the right of complainant to a divorce. The court made an allowance for permanent alimony and attorneys' fees. There

had been no temporary allowance made, nor was a request for one pressed on the court. The alimony was fixed at $850, and attorneys' fees at $250.

Complainant was at the time of the trial sixty-seven years of age, and the doctor says he was suffering from a complication of serious diseases of the heart and liver, of a progressive sort, incapable of doing any kind of physical work, and that he had prospects of no more than five years to live. His source of income was entirely from his farming operations, and he was very successful in conducting them. He operated a six-mule farm, and had that number of work stock. He owned about 650 acres of land worth, as improved, perhaps $6,000 not encumbered, and had corn, cows, and other personal property, and owed about $400. He was worth probably $7,000, and in easy financial condition.

In view of the misconduct of his wife, and that no serious fault with his conduct toward her is shown, but that she had no resources, and then lived with her father's family, and they had nothing of consequence, we are not inclined to disturb the decree in so far as it made allowance for alimony and attorneys' fees; nor in any other respect.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.