178 So.2d 819

**Berta Louise WATSON**

**v.**

**W. Mack WATSON.**

**3 Div. 124.**

Supreme Court of Alabama.

April 15, 1965.

Rehearing Denied Sept. 30, 1965.

Jones, Murray & Stewart, Montgomery, for appellee.

HARWOOD, Justice.

In the proceedings below W. Mack Watson filed a bill of divorcement against Berta Louise Watson. This original bill alleged cruelty. Berta Louise Watson filed an answer and cross-bill by which she sought a divorce on the grounds of cruelty.

W. Mack Watson amended his bill and asserted that Berta Louise Watson was guilty of adultery with one P on 1 December 1962, and further amended his bill to allege that he had no knowledge of said adultery until after he and his wife had separated.

To the amended pleading the wife filed an answer denying adultery or cruelty on her part.

After hearing the court below awarded W. Mack Watson a decree of divorce on the grounds of adultery, and also made certain provisions for the award of alimony. This appeal is from that decree.

Our review of this judgment has been rendered somewhat difficult not so much because of the evidence introduced, but because of the lack of evidence in certain aspects of this case.

Capell, Howard, Knabe & Cobbs, Montgomery, for appellant.

The evidence shows that on 2 December 1961, a fire occurred in an apartment maintained by Mr. P. in Montgomery, Alabama. Mr. P died the next day from burns received in the fire.

In investigating the fire the fire inspector for the city of Montgomery found the following handwritten letter in P's apartment:

"Dec. 1, 1961

Dear Bill:

I hereby, promise, this day, Dec. 1, 1961, I will never go out with another man, or cheat on you in any way.

I, hereby, declare I love you, with all my heart, and I adore you and will be faithful to you in every way. I am your lover, and all that means. I love you.

Love always,
Louise

Again all my love
Louise Watson"

(On back of letter)

"I have and will go to bed with you any time, as I love you.

Love
Louise

I love you truly       I love you truly
Louise

I love you Bill
Louise"

We think the evidence sufficient to show that this letter was in the handwriting of the respondent, Berta Louise Watson.

The evidence further shows that about 22 May 1962, Mrs. Watson left the marriage abode without any notice to Mr. Watson, and at the time he did not know why she had left.

The evidence further shows that a few days prior to Mrs. Watson's departure, Mr. Watson and his nephew had waylaid and rather severely beaten a man who the nephew had suspicioned was having an affair with the nephew's wife. On the morning that Mrs. Watson left, Mr. Watson had expressed his opinion of unfaithful wives, and what they needed done to them.

The night of the day Mrs. Watson left, Mr. Watson tried to locate her by telephoning her mother's home in Enterprise, but could not locate her there. A night or two later, Mrs. Watson telephoned Mr. Watson from Luverne. Her tongue was thick and she merely cursed Mr. Watson and hung up. The same proceeding seems to have been followed the following night.

Mr. Watson testified that at the time his wife left he had no idea that she was "running around" on him, and the first intimation he had of this situation was the day after Mrs. Watson had gone when his nephew told him that he "reckoned she knew she was going to get told on and got scared and left."

Mr. Watson further testified that during their marriage Mrs. Watson would. leave for the weekend, "not every month, but once or twice a month" supposedly to visit her mother in Enterprise.

Mrs. Watson did not testify in person in the proceedings below, but her testimony was by deposition. She denied she had ever committed adultery with P and gave further testimony toward establishing her allegation of cruelty toward her by Mr. Watson. There is no testimony on her part concerning the above mentioned letter.

In reaching a conclusion in this review, we are met at the outset by the provisions of Section 26, Title 34, Code of Alabama 1940, that, "No decree can be rendered on the confession of the parties. or either of them; * * *."

Originally our statute provided that, "In order to prevent collusion between the parties, in no case shall the confession of them, or either of them, be taken or received as evidence, in any case of divorce." Clay's Dig., 171, Section 16.

However, our Code of 1852, repealed the above Section and substituted for it in Section 1966, the following provision:

"No decree can be rendered on confession of the parties, or either of them."

This provision has been carried forward in our Codes in the exact language since

As stated in the case of King v. King, 28 Ala. 315, confessions are admissible, but the rendition of a decree of divorce is forbidden when a confession constitutes the only evidence of the alleged cause for divorce. "Whilst, therefore, it allows their confessions to be received, it denies credit to them, whenever they are unsupported."

However, as pointed out in King v. King, supra, the provision

"* * * does not, however, forbid the rendition of such decree when they do not constitute the only evidence, but are proved in conjunction with other circumstances and conduct, which confirm or tend to confirm them, and repel the idea of collusion between the parties. A decree for divorce, rendered on confessions, *and conduct, and circumstances,* is not a decree 'rendered on the confession of the parties', within the meaning of the Code." (Citations omitted.)

See also, Lunsford v. Lunsford, 232 Ala. 368, 168 So. 188; Cox v. Cox, 230 Ala. 158, 160 So. 230.

■ It is clear under our decisions that confessions of a party in a divorce suit must be corroborated. Lunsford v. Lunsford, supra. "Corroborating evidence" is evidence supplementary of that already given tending to strengthen or confirm it; additional evidence of a different character to the same point. Black's Law Dictionary, 4th Ed. page 441.

As stated in Hall v. Hall, 93 Fla. 709, 112 So. 622:

"That the mere admission or confession of adultery on the part of the defendant, without any substantive evidence whatever of the delictum, is not sufficient or proper evidence to authorize a court to dissolve the marital bonds seems quite well settled. * * * 2 Nelson on Marriage and Divorce, § 781; 2 Schouler on Marriage, Divorce, and Separation, § 1568."

■ The evidence which counsel for appellee argues corroborates the confession contained in the letter is, first, Mrs. Watson's sudden departure without explanation upon learning Mr. Watson's strong feelings toward unfaithful wives upon the occasion that he and his nephew beat up the man allegedly involved in an affair with the nephew's wife.

It is counsel's argument that "the guilty fleeth where no man pursueth." However, there is no evidence in the record that Mrs. Watson knew at the time of her departure that any letter written by her had been discovered. It is the contention of her attorney that her departure resulted from fear of Mr. Watson, and his cruelty to her.

Standing alone Mrs. Watson's departure, some four and one half months after the date of the letter, in no wise tends to establish the delictum of adultery on her part. Further, no evidence was presented tending to show that Mrs. Watson had ever been seen in P's company, or in or near his apartment. All in all the reason for Mrs. Watson's departure, insofar as disclosed by the record, can rest only in guesswork and speculation. This forms no basis for a judicial decree. Burdette v. Burdette, 245 Ala. 26, 15 So.2d 727; Barnett v. Barnett, 266 Ala. 489, 97 So.2d 809.

The second basis of corroboration argued by counsel as corroborating the confession is the fact that during the marriage Mrs. Watson would frequently be absent over a

weekend supposedly on visits to her mother in Enterprise. Counsel argues that this shows "opportunity for extended adultery." Again, counsel's observation is merely speculation. Opportunity for misbehavior has never been considered as proof of misbehavior. It would seem that whether Mrs. Watson actually did go to her mother's home on these weekends was a matter easily susceptible of proof, but no evidence in this regard was offered by either party.

■ While Mrs. Watson did not attend the trial below, and testified by deposition only, we do not think it can be said that this absence from the trial in any wise tended to prove the adultery apparently admitted in the text of the letter in question.

In Russell v. Russell, 270 Ala. 662, 120 So.2d 733, a divorce suit based on adultery, the respondent husband had admitted that he was the father of the three children of his paramour. Additional evidence established that he had totally supported his paramour and her three children for a long number of years; that the youngest child bore his name, and that he had petitioned the juvenile court of Lowndes County for its custody, and had brought the child into his home to live. Clearly, this additional testimony rationally tended to support and corroborate the husband's admission of adultery, and obviates any resort to speculation in applying its corroborative effect.

Again in Lunsford v. Lunsford, supra, in addition to the wife's admission of marital misconduct, she and her paramour had been seen kissing and hugging, and also observed under other "very suspicious circumstances." She was delivered of a baby on a date which the course of nature indicated was conceived during the time her husband had been confined in a hospital with a serious illness. Again, this additional evidence was substantial in its tendencies to corroborate the wife's admission of infidelity.

No substantial evidence was produced in the court below to sustain the charge of adultery on the part of Mrs. Watson, other than the aforementioned letter. Under the provisions of our statute law, and the decisions thereunder, this confession must be corroborated by substantial evidence tending to prove the delictum of adultery. It is Mr. Watson's misfortune that he has presented only evidence of a most speculative character in corroboration of the confessory statements contained in the letter. We can only act upon the case as made by the evidence and the law applicable thereto. A divorce should not have been granted on the grounds of Mrs. Watson's adultery.

Other matters are argued relative to the court's award of alimony in a lump sum. Since that part of the decree awarding a divorce is erroneous, and this judgment must be reversed, we pretermit a consideration of the assignments of error relating to the alimony aspect of the decree.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.

On Application for Rehearing.

HARWOOD, Justice.

In brief in support of appellant's (wife's) application for rehearing, counsel has pointed out that a reversal and remandment of the judgment might well result in denying counsel for appellant an attorney's fee for representing Mrs. Watson in the proceedings below in the event no further proceedings are had.

■ The original bill was filed by the appellee-husband: While the appellant filed a cross bill, the decree of divorce was awarded on the husband's amended bill. Under these circumstances counsel for the appellant-wife was, in the discretion of the court, entitled to be awarded a reasonable

**430**

attorney's fee for his representation of the wife. Penn v. Penn, 246 Ala. 104, 19 So.2d 353, and cases cited therein.

In its decree the lower court adjudged:

"4. That the said Mack W. Watson pay into Court the sum of $2,250 as full settlement of all claims of said Berta Louise Watson against him and that, of this sum, the sum of $500 be paid Hon. Walter Knabe as his solicitor's fee hereunto pertaining."

Since the lump sum award of alimony of $2,250 is rendered nugatory with the reversal of the decree, it would appear to be sounder to remand the matter of the amount of solicitor's fee to be awarded the solicitor for the appellant to the lower court for further consideration. In other words, since the solicitor's fee was carved out of the lump sum award, the lower court may have fixed the amount in the background of the lump sum award, whereas without such background the amount of the solicitor's fee may have been fixed at a higher, or lower, figure than that arrived at by the court under the circumstances.

On original submission no request for a solicitor's fee for prosecuting this appeal was requested. This matter was therefore not before us. Since further proceedings are yet open in the lower court, we will not now award a solicitor's fee to counsel for appellant in connection with this appeal. However, we are clear to the conclusion that the solicitor for the appellant is entitled to a fee for his services to be determined by the lower court.

Counsel has argued other points in support of the application for rehearing. These matters were considered in our original opinion and we adhere to our original views.

Opinion extended, application overruled.

LIVINGSTON, C. J., and LAWSON, GOODWYN, MERRILL and COLEMAN, JJ., concur.