William D. Mann ("the husband") appeals from a judgment entered by the Marion County Circuit Court that, among other things, divorced him and his wife, Kimberly H. Mann ("the wife").
The husband and the wife were married in 1985; the parties' two minor children were born in 1994 and 1996. The parties first experienced marital discord while they were living in Monroe, Louisiana, when the wife found telephone bills that showed that the husband had been calling another woman. When the wife confronted the husband about the telephone bill, the husband moved out of the parties' home and into a separate residence. In October 1996, the wife moved to Alabama with the parties' children; the husband visited the wife and the children on weekends. In February 1997, the wife and the children moved back to Louisiana after the parties had discussed reconciling.
In September 1997, problems arose between the wife and the husband's paramour, and the husband asked the wife to take the children back to Alabama so he could confront his paramour. The following week, the husband resigned from his job and began counseling. Soon after, the husband told the wife that he loved his paramour; the wife filed a complaint seeking a divorce on November 4, 1997.
On March 19, 1998, following an ore tenus proceeding, the trial court entered a judgment of divorce that, among other things, granted sole custody of the parties' two minor children to the wife; granted the husband restricted supervised visitation; ordered the husband to pay monthly child support of $1,433; and divided the marital assets. The judgment also placed the following restrictions on the husband's right to visit his children:
 "A. The [husband] shall submit to the Court and to opposing Counsel medical records and a sworn statement based on said medical records from a licensed physician regarding the [husband] and [the paramour] as the same relates to venereal diseases in general and to the herpes virus specifically;
 "B. Pending receipt and approval of this medical report by this Court, the [husband] is hereby awarded supervised visitation in the home of the maternal grandmother from 1:00 p.m. to 3:00 p.m. on Saturday and Sunday afternoons on alternating weekends beginning March 28, 1998. The [husband] shall inform the [wife] in the event he does not choose to exercise a particular alternate weekend;
 "C. In the event the medical report is deemed satisfactory by the Court, the [husband] shall have visitation on alternate weekends from 8:00 a.m. to 6:00 p.m. on Saturday and from 9:00 a.m. to 6:00 p.m. on Sunday. On the Sunday visitation, the [husband] shall attend with the children the Sunday school and church service that they customarily attend;
 "D. The [husband] and all those persons around the minor children are enjoined and restrained from the abuse of any alcohol or controlled substance;
. . . .
 "H. All visitation by the [husband] shall take place at the residence of [the husband's] brother and sister-in-law in Tuscaloosa County and under their supervision. The [husband's] brother and sister-in-law may assist in the transportation of the children for visitation."
On appeal, the husband contends that the trial court erred (1) in ordering him and his paramour to submit to the court and to opposing counsel medical records and a sworn statement based on the medical records from a licensed physician that relate to venereal diseases in general and to the herpes virus specifically, which, he contends, is in violation of his constitutional right against unreasonable searches and seizures; (2) in ordering him to attend church services and Sunday school with the children on his Sunday visitations, which, he contends, is in violation of his constitutional right to freedom of religion; (3) in limiting him to restricted supervised visitation; (4) in imputing income to him in computing his child support obligation; and (5) in dividing the marital property.
After a careful examination of the record, we note that the husband failed to *Page 992 
raise the first two issues at trial. Moreover, the husband failed to file any post-judgment motion raising these issues. The law is settled that an issue not raised before the trial court cannot be raised for the first time on appeal. Andrews v. Merritt Oil Co.,612 So.2d 409 (Ala. 1992). See also Cauthen v. Yates,716 So.2d 1256 (Ala.Civ.App. 1998). "Also, it has long been the law that constitutional issues not raised in the trial court below will not be considered for the first time on appeal." Ingram v. Ingram602 So.2d 418, 420 (Ala.Civ.App. 1992). Because these issues were not presented to the trial court, we cannot consider them in this appeal.[1]
 I. Visitation Rights
The husband contends that the trial court erred in imposing the restrictions it placed on his visitation with his children. He argues that the trial court abused its discretion because the extent of supervision required of his visitation is not supported by the evidence.
We recognize that the determination of visitation rights for the noncustodial parent rests within the discretion of the trial court, and we will not reverse a judgment determining visitation except for an abuse of that discretion. Ladewig v. Moxley,589 So.2d 738 (Ala.Civ.App. 1991). In exercising its discretion in awarding visitation rights, the trial court's primary consideration must be the best interests and welfare of the children, and each case must be decided on its own facts. Durhamv. Heck, 479 So.2d 1292 (Ala.Civ.App. 1985).
The wife testified that she was scared that the husband might refuse to return the children. However, the record contains no evidence that the husband is a flight risk, nor is there any evidence that the husband has been unreliable in visiting the children. The wife also testified that she did not want the husband to have overnight visitation because she was worried about the "health risk." However, the wife presented no evidence to support her assumption that the husband or his paramour had genital herpes, or that the husband and his paramour would be a health risk to the children. Although the record does contain evidence that the husband consumed alcohol regularly, the evidence does not show that the husband's use of alcohol ever posed a danger to the children. The wife also testified that the husband had never been arrested for any conduct related to alcohol, such as public intoxication or driving under the influence.
The wife testified that the husband had been a good father during the first year of the parties' oldest child's life. She also stated that she had told friends and relatives that the husband had been a good father. However, the wife also stated that the husband had very little participation in caring for the children. The wife's mother testified that the children were excited to see the husband when he came for visitation, but that the husband did not interact with, or seem to be interested in playing with the children. She also stated that the children wanted to know where she was at all times and would come looking for her every so often. The husband disputed this evidence. He testified that during his visitation with the children, they react to him and are very *Page 993 
happy when they are with him. He testified that the youngest child calls him "Dada." He stated that on the one occasion he was allowed to leave the home of the wife's mother during visitation, he and the children went to a park, to a McDonald's restaurant, and to a Wal-Mart department store; that he and the children had had a "big time"; and that the children were devastated when he left.
The husband stated that he believed it would benefit his relationship with the children and their relationship with him if he were able to spend more unfettered time with them, without the scrutiny of the wife's mother. He stated that visitation with the children at the wife's mother's house was awkward. The record also indicates that the husband wants to reestablish his relationship with the children. He testified that the most important thing to him is to visit with the children as much as possible. There is evidence that the husband has visited with the children as much as he has been allowed, even though the required travel has been difficult and inconvenient for him.
The trial court's judgment requires the husband to pick up the children at 8:00 a.m. on Saturday morning in Winfield, Alabama; to drive approximately two hours to Tuscaloosa, Alabama; to visit with the children for approximately six hours; and then to return to Winfield.[2] On Sunday, the husband is required to pick the children up in Winfield at 9:00 a.m.; to attend Sunday school and church services with the children until approximately noon; to drive to Tuscaloosa after church; to visit with the children for approximately two hours; and then to drive the children back to Winfield. As presently structured, the husband's visitation requires the children, ages two and four, to be in the car for approximately eight hours on every weekend that he visits them. Under the circumstances of this case, we cannot conclude that requiring the children to be in an automobile for such long periods is in their best interests. Accordingly, we reverse that portion of the trial court's judgment imposing these restrictions upon the husband's visitation with the children, and we remand this case to the trial court for the entry of a judgment containing visitation provisions that are consistent with the best interests of the children.
 II Imputing Income
The husband next contends that the trial court erred in imputing a yearly income of $78,000 ($6,500 monthly) to him in calculating his child support obligation.
Rule 32 (B)(5), Ala. R. Jud. Admin., provides, in pertinent part:
 "If the court finds that either parent is voluntarily unemployed or underemployed, it shall estimate the income that parent would otherwise have and shall impute to that parent that income; the court shall calculate child support based on that parent's imputed income. In determining the amount of income to be imputed . . . the court should determine the employment potential and probable earning level of that parent, based on that parent's recent work history, education, and occupational qualifications, and on the prevailing job opportunities and earning levels in the community."
Moreover, we note that the trial court's determination of whether a parent is underemployed so as to warrant the imputation of income is a factual determination subject to the ore tenus rule, and will not be reversed absent a showing that the trial court abused its discretion. Morin v. Morin, 678 So.2d 166
(Ala.Civ.App. 1996); Cunningham v. Cunningham, 641 So.2d 807
(Ala.Civ.App. 1994).
The record reveals that the husband was employed throughout the marriage until he resigned from his last job in September 1997; he has been unemployed since then. His income in 1996 was approximately $123,000, and his income for the nine months of 1997 prior to his resignation was $89,157. In light of these facts, we conclude the trial court did not abuse its discretion in imputing *Page 994 
income to the husband in determining his child support obligation.
 III. Division of Marital Estate
The husband's argument as to the trial court's division of the marital property is simply that the division is not equitable. Our standard of review is well settled:
 "In reviewing a judgment in a divorce case in which the trial court was presented conflicting evidence ore tenus, we are governed by the ore tenus rule. Under this rule, the trial court's judgment will not be disturbed on appeal unless it is plainly and palpably wrong. Hartzell v. Hartzell, 623 So.2d 323
(Ala.Civ.App. 1993). Matters of property division rest soundly within the trial court's discretion and its determination regarding those matters will not be disturbed on appeal unless its discretion was plainly and palpably abused. Goodwin v. Estate of Goodwin, 632 So.2d 500 (Ala.Civ.App. 1993). A division of marital property in a divorce case does not have to be equal, only equitable, and a determination of what is equitable rests within the sound discretion of the trial court. Pride v. Pride, 631 So.2d 247
(Ala.Civ.App. 1993). When dividing marital property, a trial court should consider several factors, including the length of the marriage; the age and health of the parties; the future prospects of the parties; the source, type, and value of the property; the standard of living to which the parties have become accustomed during the marriage; and the fault of the parties contributing to the breakup of the marriage. Hartzell, supra."
Golden v. Golden, 681 So.2d 605, 608 (Ala.Civ.App. 1996).
In its division of the marital estate, the trial court allocated the following property to the wife: a certificate of deposit in the approximate sum of $5,300; any of the remaining $700 in travelers checks; an IRA account in her name in the approximate amount of $600; all funds in a 401 (k) plan in the approximate amount of $53,000; a 1996 Chevrolet Suburban and the total indebtedness thereon in excess of $20,000; and all of the parties' furniture except those items specifically awarded to the husband. The wife was also required to maintain a $100,000 life insurance policy on her life, naming the two minor children as beneficiaries, and was ordered to pay a credit card debt to Simmons FNB in the approximate amount of $1,750.
The trial court awarded the husband a 1990 Nissan Sentra automobile that is paid for; any remaining balance from the $9,300 he had received as severance pay; any remaining funds from the $9,000 the husband withdrew from the parties' savings account on or about the date of separation; an IRA account worth $2,500; and the following pieces of furniture: a family dresser, chest and nightstand; a desk; dental cabinets; his family pictures; china and crystal from his grandmother; a fish cooker; golf equipment; and his clothes and personal effects. The husband was also ordered to pay the parties' remaining credit card debts in the approximate amount of $43,334; to maintain the $300,000 life insurance policy on his life, naming the two minor children as the beneficiaries, with a cash value of approximately $7,200; and to maintain a health insurance policy on the minor children.
At the time of the hearing, the wife was 36 years old and lived with her mother. She was employed at her father's restaurant, earning $1.25 or $1.50 per hour plus tips, with net earnings of approximately $752 per month. The husband was, at the time of the hearing, voluntarily unemployed. However, the husband had been continually employed throughout the marriage, and at the time of the husband's resignation in September 1997, he had earned $89,157 that year.
We conclude, pursuant to Golden, that in light of the difference in the earning potential of the parties, and in light of the husband's conduct leading up to the parties' divorce, the division of the marital estate was not a plain and palpable abuse of the trial court's discretion.
 IV. Conclusion
We affirm the trial court's judgment with regard to imputing income to the husband in determining his child support obligation and with regard to the division of the marital estate. We reverse the trial court's judgment *Page 995 
with regard to the restricted supervised visitation provisions, and remand the cause for further proceedings.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES, MONROE, CRAWLEY, and THOMPSON, JJ., concur.
[1] While we affirm the judgment of the trial court as to these two issues because of the husband's failure to preserve them, we note that the husband's argument appears to have some merit with regard to the issue of medical testing as it relates to the constitutional protection against an unreasonable search and seizure. See, e.g., Anonymous v. Anonymous, 617 So.2d 694
(Ala.Civ.App. 1993), Skinner v. Railway Labor Executives' Ass'n,489 U.S. 602, 109 S. Ct. 1402, 103 L. Ed.2d 639 (1989); New Jersey v.T.L.O., 469 U.S. 325, 105 S. Ct. 733, 83 L. Ed.2d 720 (1985). Seealso Anne D. v. Raymond D., 139 Misc.2d 718, 528 N.Y. So.2d 775 (N.Y. Sup. Ct. 1988); Doe v. Roe, 139 Misc.2d 209, 526 N.Y. So.2d 718 (N.Y. Sup. Ct. 1988). Further, to the extent that the trial court's judgment requires specific church attendance, we note that the husband's argument that the restriction violates his right to freedom of religion also appears to have a sound legal basis. See, e. g. Ex parte Hilley, 405 So.2d 708 (Ala. 1981). See also Ala. Const. of 1901, Art. I, section 3.
We also note that a trial court has no authority to order a non-party to an action to undergo medical testing. See, e.g.,McKinney v. Alabama, 424 U.S. 669, 96 S. Ct. 1189,47 L. Ed.2d 387 (1976).
[2] We take judicial notice of the locations of Winfield, Alabama, and Tuscaloosa, Alabama, and of the approximate distance between the two points and the reasonable time required to drive a car between these two points. See American Auto. Ins. Co. v.Carson, 212 Ala. 293, 102 So. 219 (1924).