804 So.2d 1118 (2001)
Jeannie TURNER
v.
Timothy TURNER.
2000356.
Court of Civil Appeals of Alabama.
June 22, 2001.
*1119 Stephen P. Johnson and Kelly A. McGriff of Brackin & McGriff, P.C., Foley, for appellant.
Gary L. Armstrong of Armstrong, Vaughn & Scroggins, Daphne, for appellee.
YATES, Presiding Judge.
On June 10, 1999, Timothy Turner sued Jeannie Turner, seeking a divorce and alleging incompatibility of temperament and an irretrievable breakdown of the marriage. The wife answered and counterclaimed for a divorce, alleging adultery. While the divorce action was pending, the husband was ordered to pay the wife $1,500 per month in temporary support.
Following an ore tenus proceeding, the trial court entered a judgment on August 22, 2000, divorcing the parties. The divorce judgment provides in part as follows:
"1. The court finds from the evidence that the 29-year marriage, in the instant case, failed because the [husband] began an [adulterous] affair, in the later stages of the marriage and that he moved in with the woman in another state shortly after filing the petition for divorce. Therefore, the court grants the wife's counterclaim for divorce on the grounds of adultery.
". . . .
"3. The court finds from the evidence that during the long-term marriage, the wife and the children moved a number of times in order to further the various careers of the husband. Consequently, the wife has not developed any job skills other than secretarial skills and some minor sales experience. The court is of the opinion that, in order to meet the wife's necessary living expenses and for her to approximate the standard of living to which she was accustomed during marriage, periodic alimony is necessary. The husband is ordered to pay periodic alimony in the amount of $1,250.00 per month, beginning in September 2000.
"4. The court finds that the parties have essentially divided the real estate and personal property between themselves. The court hereby ratifies and confirms the division of personal property heretofore made by the parties and each party shall retain the personal property now in his or her possession. The husband is ordered to immediately execute the Certificate of Title conveying his interest in the Buick automobile to the wife.
". . . .
"6. The court finds from the evidence that the outstanding credit card bills were paid off from a portion of the sales proceeds of the parties' former marital residence in Spanish Fort, Alabama. The court determines that the husband paid off some credit card bills that he had incurred in setting [up] the new household in Virginia, with his live-in girl friend. The husband is ordered to pay the wife the sum of $2,000.00 to *1120 adjust the equities in paying off the credit card bills.
"7. The court finds from the evidence that the husband bought nine years of military service to be applied on his FBI retirement. The court has taken into consideration the fact that the husband served some time in the military before the marriage and will complete some service with the FBI before becoming eligible for retirement. The court determines that the wife is entitled to receive 30% of any retirement benefits that the husband receives and at the time that the husband enters into retirement, the periodic alimony shall be reduced to an amount equal to 30% of his retirement benefits. The husband is ordered to sign any necessary papers to carry out this provision of the divorce decree."
The wife moved the trial court to alter, amend, or vacate its judgment, or, in the alternative, for a new trial, arguing that the trial court erred in not specifically awarding her a portion of the Thrift Savings Plan that was accumulated by the parties during the marriage. On November 28, 2000, the trial court amended its judgment and awarded the wife 30% of the husband's retirement fund, as well as 30% of the Thrift Savings Plan.
The wife appeals, arguing that the trial court erred in its award of alimony and in its division of the marital property.
In reviewing a judgment of the trial court in a divorce case, where the trial court has made findings of fact based on oral testimony, we are governed by the ore tenus rule. Under this rule, the trial court's judgment based on those findings will be presumed to be correct and will not be disturbed on appeal unless it is plainly and palpably wrong. Hartzell v. Hartzell, 623 So.2d 323 (Ala.Civ.App.1993). This presumption of correctness is based on the trial court's unique position to observe the witnesses and to assess their demeanor and credibility. Hall v. Mazzone, 486 So.2d 408 (Ala.1986). Additionally, matters of alimony and property division rest soundly within the trial court's discretion, and rulings on those matters will not be disturbed on appeal except for a plain and palpable abuse of discretion. Welch v. Welch, 636 So.2d 464 (Ala.Civ.App.1994). Matters of alimony and property division are interrelated, and the entire judgment must be considered in determining whether the trial court abused its discretion as to either of those issues. Willing v. Willing, 655 So.2d 1064 (Ala.Civ.App.1995). Factors the trial court should consider in its award of alimony and its division of property include the earning abilities of the parties; the future prospects of the parties; their ages and health; the duration of the marriage; the parties' station in life; the marital properties and their sources, values, and types; and the conduct of the parties in relation to the marriage. Id., at 1067. Further, a division of the marital property in a divorce case does not have to be equal, only equitable, and a determination of what is equitable rests within the sound discretion of the trial court. Id. Moneys paid into a retirement fund are an asset that may be considered by the court in effecting an equitable property division. Welch, supra, 636 So.2d 464.
Our review of the record reveals that the husband was 50 years old and the wife was 54 at the time of the trial. There were two children born of the marriage, both of whom are past the age of majority.
The husband has been employed by the Federal Bureau of Investigation since 1984 and is presently an instructor at the FBI Academy in Virginia. Before his employment with the FBI, the husband had been *1121 on active duty with the United States Navy, had spent a year as an automobile salesman, had obtained an undergraduate degree from Baylor University, had worked as a farm laborer in Omaha, had obtained a master's degree, and had attended two years of law school. As a result of the husband's military assignments, educational pursuits, and FBI career, the family moved 14 times. The family has lived in Baldwin County for the last nine years.
During the 29-year marriage, the wife was the primary caregiver for the children. She was employed for short periods at various jobs, but never accumulated any retirement fund or benefits. At the time of the trial, she was employed at a Sherwin Williams paint store as a decorator, earning approximately $800 per month. It appears that the wife does not have a college education.
The husband's monthly income was $4,333. He accumulated funds in two retirement plans: the Thrift Savings Plan and a federal retirement plan. The Thrift Savings Plan was valued at $260,000, and the value of the federal retirement plan was unknown at the time of the trial. Both retirement plans were accumulated during the marriage, with the exception of 22 months of military service earned before the marriage. Because the amount of Social Security tax charged on FBI retirement differed from military retirement, the parties decided to use marital funds to pay the difference in Social Security tax on nine years from the husband's military service in order to enhance his retirement. That included the 22 months for which the husband earned retirement credit while he was in the military service before the marriage. The husband will complete 20 years of service with the FBI in 2004 and will be eligible to withdraw funds at that time if he retires.
The husband testified, with regard to paying alimony, that he was "an economic slave," because, he stated, "the fruits of my labor, the fruits of my work, are not mine, they were stolen from me, they are taken from me." With regard to the wife's entitlement to a portion of his retirement accounts, he testified that "she had the opportunity to work and earn hers." On several of the checks written to his wife for temporary alimony, the husband wrote on the memo line "hate and greed money" and "blood and hate money."
The wife testified that her living expenses were approximately $1,535 per month. However, she argues in her brief that this figure does not include health-insurance premiums, which the husband had previously paid through his employment, and premiums for automobile insurance. The husband estimated his monthly expenses at $3,808 per month.[1]
Although the husband attempts to argue that the wife failed to prove adultery, he filed no postjudgment motion raising that issue. An argument not raised before the trial court cannot be raised on appeal. Mann v. Mann, 725 So.2d 989 (Ala.Civ.App.1998). Further, he did not cross-appeal. We add that there was ample evidence to support the trial court's finding of adultery, including testimony from the husband's brother. Also, the husband told the wife that he might have infected her with a sexually transmitted disease, and he admitted that he had had himself tested.
*1122 We conclude that the trial court's distribution of the retirement accounts and the alimony award were inequitable and an abuse of discretion, based on the 29 year marriage; the fact that the wife had reared two children, had moved at least 14 times during the marriage because of the husband's employment and schooling, and has no retirement plan of her own; and the husband's conduct in causing the breakdown of the marriage. Cf. Strain v. Strain, 793 So.2d 804 (Ala.Civ.App. 2001)(award of one-half of wife's retirement savings plan and periodic alimony was equitable based on the length of the marriage and disparity in income); Higgins v. Higgins, 726 So.2d 713 (Ala.Civ.App.1998)(trial court abused its discretion in failing to award wife a portion of husband's retirement benefits where parties were married for 21 years, had 4 children, moved 7 times during the marriage, and wife had no retirement plan and was ill); Laws v. Laws, 653 So.2d 293 (Ala.Civ.App.1994)(trial court erred in its distribution of husband's five retirement accounts, based on length of marriage; wife's age, health, and employment status; and husband's adulterous conduct). The judgment is reversed, and the case is remanded for the trial court to enter an order consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON and PITTMAN, JJ., concur.
MURDOCK, J., concurs in the result.
CRAWLEY, J., dissents.
CRAWLEY, Judge, dissenting.
I would affirm the trial court's award of periodic alimony and its division of marital property. Our supreme court has stated that an appellate court reviewing a trial court's judgment should not
"substitute its judgment of the facts for that of the [trial] court. Rea v. Rea, 599 So.2d 1206 (Ala.Civ.App.1992). Instead, our task is simply to determine if there was sufficient evidence before the [trial] court to support its decision against a charge or arbitrariness and abuse of discretion. Peterman v. Peterman, 510 So.2d 822 (Ala.Civ.App.1987)."
Ex parte Smith, 673 So.2d 420, 422 (Ala. 1995).
The trial court granted the divorce on the ground of the husband's adultery. The trial court awarded the wife $1,250 periodic alimony and awarded the wife 30% of the husband's retirement accounts. The husband's monthly income is $4,333the wife's periodic alimony award is almost 30% of the husband's monthly income. I conclude that the award of alimony and the division of the retirement benefits are equitable. The wife would be entitled only to a maximum of 50% of the husband's retirement benefits, as stated in § 30-2-51(b)(3), Ala.Code 1975. I do not conclude that the trial court's finding of adultery mandates a higher percentage of the retirement benefits or a higher periodic-alimony award.
NOTES
[1] The parties agree in their briefs that the husband's monthly expenses were $3,808. However, the exhibit cited by both parties estimates $8,858 in monthly expenses, including a $1,267 mortgage payment, $500 in home upkeep, $100 in laundry charges, and numerous other items of expense. It is unclear which expense items the parties used to come up with the $3,808.