950 So.2d 322 (2006)
Thomas E. WEBB, Jr.
v.
Carolyn P. WEBB.
2040797.
Court of Civil Appeals of Alabama.
August 11, 2006.
*323 Thomas Allen Deas, Mobile, for appellant.
Grady R. Edmondson, Mobile, for appellee.
*324 BRYAN, Judge.
Thomas E. Webb, Jr. ("the husband"), appeals a divorce judgment entered by the Mobile Circuit Court. We affirm in part, reverse in part, and remand.
On October 6, 2004, Carolyn P. Webb ("the wife") sued the husband for a divorce on the grounds of incompatibility, irretrievable breakdown of the marriage, and adultery. In her complaint, the wife requested, among other things, custody of the parties' four minor children, child support, and alimony. The husband, answering on January 11, 2005, denied the allegation of adultery and counterclaimed for, among other things, a divorce on the grounds of incompatibility and irretrievable breakdown of the marriage.
On March 2, 2005, the trial court received evidence ore tenus. On March 7, 2005, the trial court entered a judgment granting the parties a divorce on the grounds of the husband's adultery and the parties' incompatibility. In addition, it awarded the wife primary physical custody of the parties' four minor children and $1,891 in monthly child support. The judgment also awarded the husband visitation rights, but it restricted his right to exercise visitation to his home. It also awarded the wife, among other things, $750 in monthly periodic alimony and $8,000 of the husband's retirement benefit. Additionally, it ordered the husband to pay, among other things, COBRA health insurance on the wife's behalf for a period of two years. Furthermore, the judgment awarded the parties certain marital properties and allocated various marital debts.
The husband moved the trial court to alter, amend, or vacate its judgment on March 24, 2005. The trial court denied the husband's postjudgment motion, and the husband timely appealed.
The following facts were undisputed. The husband and the wife married in September 1994. Four children were born of the marriage. The wife worked as a homemaker for the majority of the marriage. The husband works for GE Inspection Services and earned a gross income of $89,400 in 2004. The husband, who frequently travels for extended periods of time in connection with his job, had been working in Burlington, Washington, for a year before the parties' separation.
On appeal, the husband argues that the trial court erred in divorcing the parties on the ground of adultery. The wife testified that the parties separated when she discovered, in September 2004, that the husband was having an adulterous affair. According to the wife, she inadvertently called the husband's alleged paramour, who told her that she had been having an affair with the husband. The wife also testified that she spoke with the alleged paramour's friend, who told her that the husband and the alleged paramour had been vacationing in Miami, Florida, and that the husband had been living with the alleged paramour while he was working in Washington. Afterwards, the wife confronted the husband regarding his alleged infidelity. When he was confronted, according to the wife's testimony, the husband apologized for the affair. The wife then told the husband that she would forgive him under certain conditions. However, according to the wife, the husband stated that he no longer loved the wife and that their marriage was over. The husband then left the marital residence that same day.
In addition, the wife testified that Lloyd Hull, the husband's friend, told her that the husband had committed adultery throughout the marriage and that the husband had been bringing his paramours to Hull's home to have sexual relations. According *325 to the wife, when she confronted the husband with Hull's allegations, the husband apologized for his conduct rather than denying that it had occurred.
Furthermore, the wife testified that she confronted the husband regarding affairs he had allegedly had with seven different people during the marriage. According to the wife, the husband never denied her allegations regarding those affairs. The wife also testified that, on another occasion, the husband had admitted that he had had numerous affairs throughout the marriage.
As circumstantial evidence of the husband's alleged acts of adultery, the wife introduced evidence of charges ranging from $125 to $140 for meals and charges ranging from $30 to $40 for drinks the husband had incurred at various restaurants and bars during a trip to Miami. However, the husband testified that he had incurred those charges by purchasing meals for himself or by purchasing drinks for himself and a male friend.
When the wife's counsel cross-examined the husband regarding whether he had committed adultery and whether he had been living with his alleged paramour, the husband responded by invoking the privilege against self-incrimination provided by the Fifth Amendment to the United States Constitution. However, in other portions of the husband's testimony, he denied having a girlfriend, denied going to Hull's house to have sexual relations, denied vacationing with his alleged paramour in Miami, and denied having lived with his alleged paramour in Washington. Additionally, the husband testified that the last time he stayed in a hotel in Washington was in December 2004. He also stated that he did not incur credit-card charges for hotel expenses but instead paid those expenses in cash. Furthermore, when questioned about his relationship with one of his alleged paramours, the husband stated that they were only friends.
"`While it is difficult and somewhat rare to prove adultery by direct means, the charge of adultery in a divorce case may be proven by circumstantial evidence which creates more than a mere suspicion.'" Fowler v. Fowler, 636 So.2d 433, 435 (Ala.Civ.App.1994) (quoting Billington v. Billington, 531 So.2d 924, 924 (Ala.Civ.App.1988)). Furthermore, "proof [of adultery] must be sufficient to lead the guarded discretion of a reasonable and just mind to the conclusion of adultery as a necessary inference. Hooker [v. Hooker, 593 So.2d 1023 (Ala.Civ.App.1991)]." Langley v. Langley, 617 So.2d 678, 679 (Ala.Civ.App.1992) (emphasis added).
This court has also stated: "The testimony of one spouse as to the other spouse's confession of adultery is, alone, insufficient to warrant a divorce on the grounds of adultery. . . ." Yates v. Yates, 676 So.2d 365, 366 (Ala.Civ.App.1996); see also § 30-2-3, Ala.Code 1975. Additionally, our supreme court has stated: "It is clear under our decisions that confessions of a party in a divorce suit must be corroborated." Watson v. Watson, 278 Ala. 425, 428, 178 So.2d 819, 821 (1965) (citing Lunsford v. Lunsford, 232 Ala. 368, 168 So. 188 (1936)). Furthermore, "`the mere admission or confession of adultery on the part of the defendant, without any substantive evidence whatever of the delictum, is not sufficient or proper evidence to authorize a court to dissolve the marital bonds. . . .'" Watson, 278 Ala. at 428, 178 So.2d at 821 (quoting Hall v. Hall, 93 Fla. 709, 112 So. 622 (1927)) (emphasis added).
Although a party's invoking the privilege against self-incrimination in response to questions regarding adultery raises a presumption against that party, Langley, 617 So.2d at 680, this court has also stated:

*326 "[T]he `presumption that operates against a party claiming the privilege' is not `sufficient proof' to lead the guarded discretion of a reasonable and just mind to the conclusion that the act of adultery was committed as a necessary inference. In other words, a presumption against a party is not sufficient competent and legal evidence that the party has committed adultery."
Langley, 617 So.2d at 680; see also Mosley v. Mosley, 747 So.2d 894, 899 (Ala.Civ.App. 1999).
We conclude that the evidence of the husband's alleged adultery introduced by the wife in the case now before us was insufficient to support the trial court's divorcing the parties' on the ground of the husband's alleged adultery. First, the wife's testimony that the husband admitted committing adultery was insufficient without corroboration by "substantive evidence." Watson, 278 Ala. at 428, 178 So.2d at 821. Second, none of the wife's other evidence of the husband's alleged adultery constituted "substantive evidence" of adultery. Id.
The wife's testimony that the husband's alleged paramour confessed to adultery and that Hull stated that the husband had committed adultery were not sufficient. See Hubbard v. Hubbard, 55 Ala.App. 521, 317 So.2d 489 (Civ.1975) (holding that the testimony of the paramour's spouse regarding the paramour's confession of adultery with the husband was insufficient to corroborate the wife's testimony regarding the husband's extrajudicial confessions of adultery). The evidence that the husband had incurred charges ranging from $125 to $140 for meals and charges ranging from $30 to $40 for drinks was not sufficient. While the husband's incurring such charges could possibly indicate that the husband was entertaining a paramour, it does not necessarily lead to that inference  the husband could have incurred the charges eating and drinking by himself or by entertaining one or more male guests. Consequently, it is not substantive evidence of adultery. See Langley, 617 So.2d at 679 ("[P]roof [of adultery] must be sufficient to lead the guarded discretion of a reasonable and just mind to the conclusion of adultery as a necessary inference." (emphasis added)). Similarly, the nonexistence of hotel bills is insufficient because it does not "lead the guarded discretion of a reasonable and just mind to the conclusion of adultery as a necessary inference." Id. (emphasis added). Finally, the husband's invoking the privilege against self-incrimination is not sufficient. See Langley, supra; cf. Anonymous v. Anonymous, 353 So.2d 510 (Ala.Civ.App.1977), rev'd on other grounds, 353 So.2d 515 (Ala.1977) (holding that other evidence, standing alone, was sufficient to support a finding of adultery when the allegedly adulterous wife and her alleged paramour invoked the privilege against self-incrimination).
In his special writing, Judge Pittman suggests that the supreme court, by stating in King v. King, 28 Ala. 315, 319 (1856), that a court cannot grant a divorce on the ground of adultery when extrajudicial admissions of adultery constitute the only evidence of adultery, implied that any additional evidence of adultery will suffice to corroborate the extrajudicial admissions. However, that is not the case; the extrajudicial admissions must be corroborated by "substantive evidence" of adultery, i.e., evidence that would "lead the guarded discretion of a reasonable and just mind to the conclusion of adultery as a necessary inference." Langley, 617 So.2d at 679 (emphasis added).
Therefore, the trial court erred in granting a divorce on the ground of adultery. Consequently, we must reverse the judgment *327 insofar as it granted a divorce on the ground of adultery.
The husband also argues that the trial court erred in awarding the wife $750 in monthly periodic alimony. He argues that the judgment should be reversed because, he says, the trial court erred in fashioning its periodic-alimony award by considering adultery as a ground for the divorce. He also argues, without citing any authority, that the trial court's judgment ordering him to pay the wife $1,891 in monthly child support, the indebtedness on the wife's 2004 Ford Explorer, the wife's COBRA health insurance, and $750 in monthly periodic alimony, in essence, financially "cripples" him.
Based on our review of the evidence, we conclude that the trial court did not abuse its discretion in awarding the wife $750 in periodic alimony, regardless of whether it considered adultery as a ground for the divorce. See Ragan v. Ragan, 655 So.2d 1016, 1018-19 (Ala.Civ.App.1995) (reversing the judgment divorcing the parties on the ground of adultery and affirming the trial court's award of alimony and allocation of marital property). Additionally, we conclude that the trial court did not abuse its discretion in ordering the husband to pay for COBRA health insurance on the wife's behalf and allocating various marital debts. Furthermore, we conclude that the trial court did not err in awarding the wife $1,891 in monthly child support, which was in compliance with the Child Support Guidelines set forth in Rule 32, Ala. R. Jud. Admin.
The husband also argues, and the wife concedes, that the trial court erred in awarding the wife $8,000 of the husband's $15,000 retirement benefit. Section 30-2-51(b)(3), Ala.Code 1975, states that a trial court has discretion to award a noncovered spouse no more than 50 percent of a covered spouse's retirement benefit. Because the trial court's judgment awarding the wife $8,000 exceeds 50 percent of the husband's $15,000 retirement benefit, we must reverse the judgment insofar as it awarded the wife more than 50 percent of the husband's retirement benefit.
Last, the husband argues that the trial court erred in restricting his visitation with the children to his home. Regarding visitation, this court has previously stated:
"We recognize that the determination of visitation rights for the noncustodial parent rests within the discretion of the trial court, and we will not reverse a judgment determining visitation except for an abuse of that discretion. Ladewig v. Moxley, 589 So.2d 738 (Ala.Civ. App.1991). In exercising its discretion in awarding visitation rights, the trial court's primary consideration must be the best interests and welfare of the children, and each case must be decided on its own facts. Durham v. Heck, 479 So.2d 1292 (Ala.Civ.App.1985)."
Mann v. Mann, 725 So.2d 989, 992 (Ala. Civ.App.1998).
At trial, the wife testified that the husband had a problem with excessive alcohol consumption. The wife testified that she had discovered that problem when she learned that he had been arrested in April 2004 for driving under the influence of alcohol in Washington. The husband, however, denied that he has a problem with excessive alcohol consumption. Furthermore, he testified that he pleaded guilty to a charge of negligent driving. The husband did admit that the arresting police officer stated that he smelled alcohol on the husband and that the husband's speech was slurred. However, the husband had never been previously arrested for driving under the influence. Additionally, the husband testified that he has a valid Alabama driver's license. The wife, *328 on the other hand, testified that the husband did not possess a valid driver's license and that his driver's license had been revoked. She also testified that she is concerned about the possibility of the husband's driving under the influence of alcohol while the children are in his care.
This court has stated: "In ore tenus proceedings, the trial court is the sole judge of the facts and of the credibility of the witnesses, and it should accept only that testimony which it considers worthy of belief. Brown v. Brown, 586 So.2d 919 (Ala.Civ.App.1991)." Clemons v. Clemons, 627 So.2d 431, 434 (Ala.Civ.App.1993). Based on the wife's testimony, the trial court could have concluded that the husband had a problem with consuming excessive amounts of alcohol and that his excessive consumption of alcohol could place the children at risk while they were in his care. Therefore, the trial court could have concluded that it was in the best interest of the children to restrict the husband's visitation to his home. Consequently, the trial court did not abuse its discretion by imposing that restriction.
We reverse the judgment insofar as it granted the divorce on the ground of adultery and awarded the wife more than 50 percent of the husband's retirement benefit. In all other respects, we affirm the judgment. We remand the case for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
CRAWLEY, P.J., concurs specially, with writing, in which THOMPSON, J., concurs.
PITTMAN, J., concurs in part and dissents in part, with writing, in which MURDOCK, J., concurs.
MURDOCK, J., concurs in part and dissents in part, with writing.
CRAWLEY, Presiding Judge, concurring specially.
I write to express my concerns regarding the source of the high scrutiny given to the testimony of one spouse as to admissions of adultery from the other spouse and to explain why I do not join either dissent in this case.
In Alabama, our present caselaw appears to derive from a section of the Code, § 30-2-3, Ala.Code 1975, that has remained the same since well before the advent in 1971 of our modern "no-fault" grounds for divorce.[1] Today, § 30-2-3, Ala.Code 1975, provides:
"No judgment can be entered on the confession of the parties, or either of them, or if it appear that adultery was committed by either, with the consent of the other, for the purpose of obtaining a divorce, or where both parties have committed adultery, or where there has been a condonation of adultery by the admission of the offending party to conjugal embraces after knowledge of the commission of the crime, or when the husband knew of or connived at the adultery of the wife."
(Emphasis added.) The annotations to this section indicate that it was previously codified as: "Code 1852, § 1966; Code 1867, § 2356; Code 1876, § 2690; Code 1886, § 2327; Code 1896, § 1491; Code 1907, § 3799; Code 1923, § 7413; Code 1940, T. 34, § 26." Cases that apply this *329 section or its precursors, and upon which our current jurisprudence appears to be based, date at least as far back as King v. King, 28 Ala. 315 (1856). See also Russell v. Russell, 270 Ala. 662, 120 So.2d 733 (1960).
Thus it is apparent that our present caselaw is built upon a statute and policy intended to prevent divorces on grounds that have, in modern times, become accepted in law[2] and commonplace in practice. As noted in 49 Am.Jur. Proof of Facts 3d Adultery § 14 (1998):
"Traditionally, the preservation of the marital union was necessary to protect the decency and purity of society, and for this reason, a husband and wife could not cast it off by mutual consent, as parties to an ordinary contract may annul its obligations. Therefore, to prevent collusion, admissions of adultery by the parties were required to be corroborated by other evidence. As the grounds for divorce have became more relaxed, the need for corroboration has diminished proportionally. Divorces are now permitted by voluntary agreement and the suspicion of collusion is not nearly as likely as when divorces were available only for some specified aberrant conduct."
(Footnotes omitted.)
Because divorce law has evolved to the point that it has eclipsed some of the policy considerations behind § 30-2-3, I think that in some circumstances one spouse's testimony as to the other spouse's confessions of adultery should be sufficient evidence on which a trial court could grant a divorce on the ground of adultery. Therefore, I suggest that the time may be ripe for a reexamination of this statute and our caselaw relying upon it.
However, I point out that I do not join either dissent in this case primarily because of my reluctance to infer as much as the dissenters do from the husband's invocation of his Fifth Amendment right against self-incrimination. In Alabama, adultery is still a crime. See § 13A-13-2(c), Ala.Code 1975 (adultery is a Class B misdemeanor). The protection afforded the husband against self-incrimination by the Fifth Amendment is significant. There is a danger in inferring too much, even in the civil context, from a witness's invocation of this right. This concern is reflected in this court's holding in Langley v. Langley, 617 So.2d 678 (Ala.Civ.App. 1992). Langley, in reversing the trial court's judgment, held that even when a husband, and two of his alleged paramours, invoked the privilege against self-incrimination, the resulting adverse presumption against the husband was not sufficient to grant a divorce on the ground of adultery. Id.
I simply do not think that the adverse presumption arising from the husband's invocation of his Fifth Amendment right against self-incrimination, even when coupled with the other factors in this case, should be considered evidence "sufficiently strong to lead the guarded discretion of a reasonable and just mind to the conclusion of adultery as a necessary inference." Boldon v. Boldon, 354 So.2d 275, 276 (Ala.Civ.App.1978)(emphasis added).
THOMPSON, J., concurs.
PITTMAN, Judge, concurring in part and dissenting in part.
I concur in the main opinion in all respects except one: although the evidence does support a finding of incompatibility, I do not believe that the court's finding of *330 adultery in its divorce judgment is incorrect. The wife's testimony that she had received telephone calls from two of the husband's alleged paramours during the last three months before the parties' separation was corroborated, at least in part, by the husband's assertion of his Fifth Amendment right not to testify when questioned by the wife's attorney about his alleged extramarital affairs. Although the main opinion correctly notes that neither the husband's extrajudicial admissions or the husband's invocation of the Fifth Amendment alone would support a divorce judgment on the basis of adultery, no case is cited to the effect that the two together do not amount to substantive evidence supporting such a judgment.
In addition, the wife's attorney asked the husband about a series of credit-card receipts detailing expenses that had been incurred during time periods when, the husband testified, he was alone. Several of those receipts were for $30 to $40 at bars and for $125 and $140 for individual meals. The husband refused to answer questions seeking more details, again asserting his Fifth Amendment rights. Additionally, the wife's lawyer inquired about the nonexistence of hotel or motel bills during the last year before trial when the husband was supposed to be working out of state for his employer. The husband's failure to answer those questions lent additional support to a permissible inference, i.e., that the husband was cohabiting with someone other than his wife.
As noted in King v. King, 28 Ala. 315 (1856), one of the first cases to consider the legislative prohibition of collusive divorce judgments:
"The Code makes [extrajudicial confessions of adultery] insufficient, but does not absolutely exclude them. It makes them admissible, but forbids the rendition of a decree for divorce, when they constitute the only evidence of the alleged cause for divorce. It does not, however, forbid the rendition of such decree when they do not constitute the only evidence, but are proved in conjunction with other circumstances and conduct, which confirm or tend to confirm them, and repel the idea of collusion between the parties. A decree for divorce, rendered on confessions, and conduct, and circumstances, is not a decree `rendered on the confession of the parties', within the meaning of the Code."
King, 28 Ala. at 319 (emphasis added); see also Russell v. Russell, 270 Ala. 662, 120 So.2d 733 (1960). Although the special concurrence, like the main opinion, acknowledges that settled statutes and decisions require corroboration in order for a party to be determined in a divorce judgment to have committed adultery, I believe the evidence and logical inferences that may be drawn from the evidence in this case support the trial court's conclusion that the husband had committed adultery. Additionally, I must defer to the trial court's findings of fact pursuant to the ore tenus standard. See, e.g., Percey v. Percey, 617 So.2d 682 (Ala.Civ.App.1992) (findings of the trial court are presumed factually correct and can be altered on appeal only if they are palpably wrong). Therefore, I respectfully dissent from the reversal of the trial court's judgment of divorce on the ground of adultery.
MURDOCK, J., concurs.
MURDOCK, Judge, concurring in part and dissenting in part.
Like Judge Pittman, I concur in the main opinion in all respects except for the main opinion's conclusion that the record in this case is not sufficient to support a finding of adultery. I join Judge Pittman's writing and write separately to further explain certain concerns I have with *331 respect to the main opinion's treatment of the evidence in this case.
Although it may be true that the presumption that operates against a party claiming the privilege against self-incrimination is not sufficient evidence, by itself, to prove adultery, portions of the testimony and other evidence that do appear in the record in this case, considered in conjunction with the aforesaid presumption, and in light of the deference owed to the trial court's factual findings based on evidence received ore tenus, provide sufficient support in my opinion for the trial court's judgment. More specifically, I believe the main opinion errs (a) in analyzing each portion of the testimony and circumstantial evidence in this case to determine if that particular evidence, by itself, is "sufficient to lead the guarded discretion of a reasonable and just mind to the conclusion of adultery as a necessary inference," and (b) in characterizing isolated portions of the evidence as not being "substantive evidence" because each of them, standing alone, does not satisfy that evidentiary standard. It is only necessary that the standard of proof for a finding of adultery be satisfied by all of the evidence and applicable presumptions taken as a whole.
I further note that Ala.Code 1975, § 30-2-3, was designed by the legislature, before the advent of divorces based merely on the grounds of incompatibility or "irreconcilable differences," to prevent collusion by the parties in an effort to obtain a divorce. It therefore may be time, as Presiding Judge Crawley suggests, to reexamine judicial holdings as to the limitations imposed by § 30-2-3 on certain testimony. In any event, I see no limitation in § 30-2-3 on the probative value of testimony by a spouse as to the extra-judicial statements of third parties, such as, in this case, an alleged paramour of the husband, a friend of the husband's alleged paramour, and Lloyd Hull, a friend of the husband.
NOTES
[1] See Penny A. Davis & Robert L. McCurley, Jr., Alabama Divorce, Alimony & Child Custody Hornbook, § 7-2 (4th ed. 2005)("In 1971 the Alabama Legislature added two new grounds for divorce, `incompatibility' and `irretrievable breakdown of the marriage.'" (footnotes omitted)).
[2] See § 30-2-1(a)(7) and (9), Ala.Code 1975 (providing as grounds for divorce incompatibility of temperament and irretrievable breakdown of the marriage, respectively).