On Application for Rehearing in Case No. 2120101

PER CURIAM.
The opinion of April 18, 2014, is withdrawn, and the following is substituted therefor. Steven Mark Morgan (“the husband”) appeals from a judgment of the Chilton Circuit Court (“the trial court”) *949 divorcing him from Cathy Renee Morgan (“the wife”) and a subsequent order holding him in contempt for failing to comply with the divorce judgment.

Relevant Facts and Procedural History

The parties were married in August 1984. The wife filed a complaint for a divorce and seeking pendente lite relief in the trial court on July 16, 2010, in which she alleged that the parties were incompatible and that the husband had committed adultery. Two of the parties’ three children were minors at the time the complaint was filed. The trial court entered a standing pendente lite order that same day that, in pertinent part, awarded the wife exclusive use of the marital residence and custody .of the minor children.
On July 30, 2010, the trial court entered another pendente lite order requiring the husband to pay the wife $4,100 in monthly alimony, $1,898 in monthly child support, $323 per month for health insurance, and $1,845 per month for house and automobile payments. Additionally, the trial court ordered the husband to purchase a laptop computer and to pay college expenses for the parties’ minor daughter (“the daughter”).
On August 2, 2010, the husband filed an answer to the wife’s complaint and a counterclaim for a divorce. He alleged that the parties were incompatible and that the wife had committed adultery. The husband also claimed that the wife had committed certain torts and asked the trial court for compensatory and punitive damages. The wife filed an answer to the counterclaim, a motion to strike, and a motion for relief pursuant to the Alabama Litigation Accountability Act (“the ALAA”), § 12-19-270 et seq., Ala.Code 1975, on September 2, 2010, in which she asked the trial court to strike the tort claims as irrelevant to the divorce proceedings; the wife further alleged that the tort claims were intended for harassment. The trial court set the wife’s motions for a hearing on September 27, 2010. Although the record does not indicate the outcome of the hearing, or whether the hearing was held, it appears that the husband’s tort claims and the wife’s ALAA claim were abandoned at trial.
On October 26, 2010, the wife filed a motion requesting that the trial court .find the husband in contempt for his alleged failure to comply with certain provisions of the July 30, 2010, pendente lite support order. On December 1, 2010, the wife filed a second motion for contempt, arguing that the husband had continued to fail to meet the support obligations under the July 30, 2010, pendente lite order. The husband filed a response on December 13, 2010, in which he averred that he was in compliance with the pendente lite order.
On March 15, 2011, the husband filed a motion for, among other things, relief from the July 30, 2010, pendente lite order. In that motion, the husband asserted that his employment had changed and that -his income had decreased, and, therefore, the husband asked the trial court to recalculate his alimony and child-support obligations.
The wife filed a third motion for contempt on April 25,2011, in which she again alleged that the husband had failed to comply with the July 30, 2010, pendente lite order. . The husband responded on April 26, 2011, by filing a motion in which he renewed an earlier motion for sanctions pertaining to a discovery dispute and sought a stay of scheduled mediation, for an order pertaining to the filing of the parties’ 2010 income-tax returns, and for relief from certain pendente lite support obligations. After conducting a hearing on the wife’s contempt motion and the husband’s April 26, 2011, motion, the trial court entered an order on April 29, 2011, *950 that reduced the husband’s pendente lite child-support obligation to $1,442 per month, ordered the parties to jointly file their 2010 tax return, relieved the husband of the requirement to pay the wife for health insurance for the parties’ children because both parties had family health-insurance plans, and reserved “all other issues.”[1]
On September 30, 2011, the wife filed a motion for a temporary restraining order (“TRO”) in which she requested that the trial court enjoin the husband from having any contact with the parties’ remaining minor child (“the youngest son”) as a result of recent interactions between the husband and the youngest son. The trial court entered an order on October 2, 2011, setting a hearing on October 13, 2011, on the issue of the husband’s visitation with the youngest son. The trial court entered an order on October 13, 2011, granting the TRO.
A trial was held on June 20, 2012, July 12, 2012, and July 13, 2012, at which the trial court received ore tenus evidence from the parties, the daughter, the husband’s supervisor at work, and the husband’s girlfriend, Mischa Terry Morgan (“the girlfriend”).[2] The parties’ youngest son testified before the trial court in camera.
The parties disputed the date of their separation. The wife testified that the parties did not separate until after a June 2010 incident in which she traveled to Georgia to visit the husband and learned that the husband was living with the girlfriend. The husband disputed that testimony. The husband testified that he had moved to Georgia for work in April 2009. The husband testified that the parties separated when he moved to Georgia. The husband testified that he met the girlfriend through an Internet dating Web site, that they began dating in October 2009, and that they began living together in his apartment in Georgia in April 2010.
Evidence from a social-media site indicates that the girlfriend made several references to her relationship with the husband. In December 2010, she displayed a photograph on that social-media site of what she described as “the ring!” and she referenced an upcoming wedding. The record indicates that, in October 2011, the husband and the girlfriend traveled together to a beach resort in the Dominican Republic and had photographs of themselves taken on the beach. Those photographs, which were admitted into evidence, depict the husband and the girlfriend, who was wearing a white dress, in various poses on or near a beach. Another photograph shows the husband’s and the girlfriend’s hands wearing what appear to be wedding rings. The husband denied that he and the girlfriend were engaged or had conducted any type of ceremony while at the beach resort; he stated that the pictures were for fun and that the photographer had lent them the rings.
The husband testified that he has a master’s degree in engineering and had moved to Georgia to work for a company as an independent contractor. However, he stated that his independent-contractor position had been terminated but that the company had offered him a position as a full-time employee, which he had accepted in or around March 2011. The husband stated that he took that job for stability, *951 and he answered in the negative the wife’s questions attempting to establish that his motivation for accepting that employment was that it would allow him to be closer to the girlfriend. The husband stated that he had looked for other employment, and he named one other potential employer he had been in contact with before he was offered his current employment. According to the husband, his gross annual salary was $300,000 in 2010 and approximately $200,000 in 2011, and, he said, his annual salary as a full-time employee would be $165,000 in 2012.
The husband testified that he had paid for one semester of the daughter’s college tuition; he also stated that he had not been supplied with a class schedule, any information regarding tuition or other costs, or information concerning the daughter’s grades. The husband further testified that neither the daughter nor the youngest son would return his telephone calls or text messages and'that he believed that the wife had alienated the children from him.
The husband testified initially that he believed the marital residence was worth approximately $400,000; he later testified that $300,000 was a more realistic value. The husband testified that he maintained a checking account, a money-market account, and an individual retirement account (“IRA”) and that the current balances of those accounts were $2,000, $400 to $500, and $6,000, respectively. The husband also' testified that he had a 401(k) retirement account and that it had a balance of $83,000 at the time the complaint for divorce was filed. The husband further testified that his monthly expenses were $705 in rent, $60 to $80 for water, and a $500 truck payment.
The wife testified that she has a bachelor’s degree in marketing, but she further testified that she did not work between the birth of the ¡daughter- in 1992 and February 2011, when she began working for the Chilton County Board of Education as a bookkeeper. The wife stated that her current salary was $21,000 per year. The wife further testified that she had “inherited” a bank account from her mother but that she was not sure how much money was in the account when the divorce action was filed.[3] The husband testified that he had paid the taxes on the interest .that bank account had earned since 2005, and, according to him, there was approximately $250,000 in the bank account when he and the wife separated. .
The wife testified that the marital residence was located on property that had been given to the parties by her parents and that it was located near or adjacent to other property owned by her family. The wife described the condition of the marital residence and. described extensive repairs that were needed, which she believed would cost between $25,000 and $50,000; she submitted photographs of the condition of the marital home. The wife further testified that the husband remained in arrears with the pendente lite support. According to the wife, the July 30, 2010, pendente lite order required the husband to pay approximately $8,200 per month in total support. She testified that in October 2010 the husband paid her $6,750, in November 2010 he paid her $7,450, in December 2010 he paid her $6,691, and in January 2011 he paid her $6,773.
Additionally, the wife testified that she had had to use money from her “inherited” bank account to -pay for the daughter’s *952 college expenses. The daughter testified regarding her college expenses from the fall semester of 2010 through the time of the trial. According to the daughter, she began her freshman year at The University of Alabama in the fall of 2010, and her expenses for that semester were $8,394 for tuition and fees, $306 for books, and $1,430 for the required meal plan. The daughter further testified that the husband paid $7,280 for her spring 2011 semester tuition, but she also testified that, during that semester, she incurred costs of $331 for books, $1,430 for the meal plan, and $5,114 for other expenses. She stated that her costs for the fall 2011 semester were $4,849 for tuition and fees,[4] $385 for books, and $1,430 for the meal plan. The daughter also testified that she attended Jefferson State Community College in the summer of 2011 and that her tuition for that semester had cost $509. According to the daughter, she had incurred $33,820 in college expenses that the husband had not paid. The daughter admitted that she had not supplied the husband with information regarding her grades and her class schedules, or access to her on-line student account. The husband testified that it was difficult to pay the amounts due the university without access to the daughter’s on-line student account.
The wife testified that the husband had physically abused her several times during the marriage; the husband testified that he had only acted in self-defense in response to the wife’s physical attacks.
At the close of the trial, the wife orally petitioned the trial court to hold the husband in contempt and to incarcerate him for failing to pay a portion of the alimony and college expenses that he had been ordered to pay pendente lite. The husband argued that he had complied with the pendente lite orders to the best of his ability.
The trial court entered an order on July 13, 2012, after the conclusion of the trial, that stated that the husband was to be placed into custody for contempt for failing to pay the pendente lite support and college expenses for the daughter. The order further stated that the husband owed $107,000, with a “purger” set at $40,000; the “purger” was reduced to $36,091 by an order entered later the same day.
The trial court purported to enter a final order on July 29, 2012, granting the parties a divorce based on their incompatibility and the husband’s adultery. The July 29, 2012, order, among other things, awarded the wife sole physical custody of the youngest son and awarded the husband visitation at the youngest son’s discretion. The husband was ordered to pay the wife $1,151 per month in child support and $3,500 per month in periodic alimony. The husband was also ordered to maintain health insurance for the youngest son and to provide the youngest son with a vehicle “consistent with the vehicle provided to the parties’ other two children at age 16 and upon graduation from high school.” The July 29, 2012, order awarded the wife the marital residence and ordered the husband to pay the balance on the mortgage. The order reiterated that the husband was in contempt of the July 30, 2010, pendente lite order and that he was in arrears $107,620. Additionally, the trial court ordered the husband to pay the wife’s attorney fees in the amount of $10,750. In its July 29, 2012, order, the trial court failed to address the wife’s claim seeking postmi-nority educational support for the daughter.
*953 The husband filed a purported motion to alter, amend, .or vacate on August 6, 2012. See SCI Alabama Funeral Servs., Inc. v. Hester, 984 So.2d 1207, 1208 n. 1 (Ala.Civ.App.2007) (“A valid postjudgment motion may only be taken in reference to a final judgment.”). On August 29, 2012, the wife filed a purported postjudgment motion in which she asked the trial court to amend the July 29, 2012, order to address the issue of postminority support and to clarify some portions of that order. The husband filed an objection and a motion to strike the wife’s purported postjudgment motion.
After a hearing, the trial court entered an order on September 25, 2012, that specified the parties’ respective obligations to pay various college expenses for the daughter. It ordered the husband to pay the arrearage of pendente lite support and college expenses in monthly payments of $2,500, and it declared that all debts set out in its final judgment were not dis-chargeable by bankruptcy. The trial court’s September 25, 2012, order addressed the remaining issues between the parties, and, therefore, it constituted the final judgment in this action. See Heaston v. Nabors, 889 So.2d 588, 590 (Ala.Civ.App.2004) (“A final judgment is one that disposes of all the claims and controversies between the parties.”). On October 30, 2012, the husband filed a timely notice of appeal. That appeal was assigned case number 2120101.
On October 25, 2012, the wife filed in the trial court a motion for contempt in which she alleged that the husband had failed to comply with the July 29, 2012, order and the September 25, 2012, order (hereinafter we refer to both of those orders collectively as “the final judgment”). The trial court entered an order on October 29, 2012, setting the motion for contempt for a hearing. After conducting that hearing, the trial court entered an order on December 18, 2012, in which it found that the husband had paid the “purger” to be released from jail but had failed to pay alimony, the daughter’s college expenses, the wife’s attorney fees, medical expenses, and any amount toward the balance of the pendente lite arrearage, as ordered in the final judgment. The trial court scheduled a compliance hearing for January 8, 2013. The trial court entered an order on January 8, 2013, after the compliance hearing, finding the husband in contempt for failing to fully comply with the final judgment, and it issued a writ of arrest with a “purger” set at $15,000. .
The husband filed a petition for a writ of mandamus with this court on February 20, 2013, asking this court to direct the trial court to vacate the January 8, 2013, order finding him in contempt and to order the trial court to withdraw the writ of arrest; that filing was assigned case number 2120390.. This court entered an order on February 27, 2013, stating that the petition for a writ of mandamus would be treated as an appeal. The two appeals were consolidated by this court ex mero motu on May 29, 2013.

Issues and Analysis

The husband has raised a number of arguments in his briefs submitted to this court. We have addressed those arguments in a different order than they were asserted by the husband.

I. The January 8, 2013, Contempt Order

We first address the husband’s argument that the trial court lacked jurisdiction to enter the January 8, 2013, order that is the subject of appeal number 2120390. In that contempt order, the trial court found the husband in contempt for failing to pay, among other things, alimony and the pendente lite arrearage, and the trial court issued a writ of arrest. -The wife had filed the motion for contempt *954 upon which the contempt order is based on October 25, 2012, after the entry of the final judgment; however, the wife did not pay a filing fee, and the contempt motion was not assigned a new case number. It has long been settled that
“the filing of any contempt motion relating to the failure to abide' by the terms of a final divorce judgment requires the initiation of an independent proceeding.
“ ‘A motion or petition seeking the imposition of sanctions based on a finding of contempt initiates an independent proceeding that requires the payment of a filing fee. Opinion of the Clerk No. 25, 381 So.2d 58 (Ala.1980); see also Wilcoxen v. Wilcoxen, 907 So.2d 447 (Ala.Civ.App.2005). In Wilcoxen v. Wilcoxen, supra, the trial court entered a judgment divorcing the parties. The husband filed a contempt petition during the time the wife’s postjudgment motion was pending. The trial court denied the wife’s postjudgment motion and scheduled a hearing on the husband’s contempt petition; the wife appealed the divorce judgment. This court noted that the pendency of the husband’s contempt petition, along with another contempt petition filed after the* entry of the postjudgment order, did not affect the finality of the divorce judgment from which the wife appealed because the contempt petition initiated a “‘separate and independent proceeding’ from the underlying action.” Wilcoxen % Wilcoxen, 907 So.2d at 449 n. 1 (quoting Opinion of the Clerk No. 25, 381 So.2d at 59).’”
Kyle v. Kyle, 128 So.3d 766, 772-73 (Ala.Civ.App.2013) (quoting Kaufman v. Kaufman, 934 So.2d 1073, 1082 (Ala.Civ.App. 2005)).
Although the trial court purported to consider and rule upon the wife’s October 25, 2012, motion for contempt, the January 8, 2013, contempt order was a nullity because the action for contempt would have required the payment of a new filing fee and new service of process and should have been assigned a “.01” suffix to the case number assigned to the divorce action by the trial court’s clerk. See Johnson v. Hetzel, 100 So.3d 1056, 1057 (Ala.2012) (holding that because there was neither payment of a filing fee nor filing of a court-approved verified statement of substantial hardship the circuit court did not have jurisdiction to enter a judgment); M.M. v. B.L., .926 So.2d 1038, 1041-42 (Ala.Civ.App.2005) (dismissing the father’s appeal taken from a judgment purportedly entered on grandparents’ adoption petition because, the petition was not properly filed in the action pending at that time before the juvenile court, the petition was not served on the father as required by the Alabama Rules of Civil Procedure, and.no filing fee was paid, which was required to initiate a new action; as a result, the juvenile court lacked subject-matter jurisdiction to grant the adoption petition).
Based on the foregoing, we conclude the trial court lacked subject-matter jurisdiction to consider the October 25, 2012, motion- for- contempt filed by the wife. Therefore, the contempt order entered on January 8, 2013,.is void. Because a judgment entered by a trial court lacking subject-matter jurisdiction is void and will not support an appeal, we dismiss appeal number 2120390 with instructions to the trial court to vacate all orders stemming from the filing of the October 25, 2012, motion for contempt.

II. The Validity of the September 25, 2012, Order

We next address the husband’s argument on appeal that the trial court lacked subject-matter jurisdiction to enter the September 25, .2012,- order addressing *955 issues raised in the wife’s purported post-judgment motion. As we-explained above, the trial court’s order entered on July 29, 2012, was not a final judgment because it did not address all the issues then pending between the parties. Therefore, the motion that the wife filed on August 29, 2012, 31 days after the entry of the July 29, 2012, order, was not a valid postjudgment motion pursuant to Rule 59(e), Ala., R. Civ. P. SCI Alabama Funeral Servs., Inc. v. Hester, supra. Thus, the wife’s purported postjudgment motion was not untimely. Rather, the trial court retained jurisdiction over the divorce action until it entered a final judgment on all the pending claims on September 25, 2012. Accordingly, we reject the husband’s argument that the trial court lacked jurisdiction to enter the September 25, 2012, order insofar as it addressed the issues raised by the wife in her purported postjudgment motion. '

III. Grounds for the Divorce

The husband also contends that the trial court erred by finding that he committed adultery and citing that finding as one of the grounds for the divorce in the final judgment.
“We note at the outset that when a trial court hears ore tenus evidence in a divorce proceeding, its judgment is presumed correct if it is supported by the evidence. Waid v. Waid, 540 So.2d 764 (Ala.Civ.App.1989). Absent an abuse of discretion, we are not permitted to substitute our judgment for that of the trial court. Beckwith v. Beckwith, 475 So.2d 575 (Ala.Civ.App.1985).”
Fowler v. Fowler, 636 So.2d 433, 434-35 (Ala.Civ.App.1994).
The husband correctly cites Smith v. Smith, 599 So.2d 1182 (Ala.Civ.App.1991), Fowler, supra, and Ragan v. Ragan, 655 So.2d 1016 (Ala.Civ.App.1995), for the proposition that the party alleging- adultery must present sufficient evidence to establish that the adulterous behavior took place before the filing of the divorce complaint. The husband further cites Redden v. Redden, 44 So.3d 508, 512 (Ala.Civ.App. 2009), in which this court held that there was insufficient evidence, indicating that-the husband in that case had committed adultery before the. parties separated.
“ While it is difficult and somewhat rare to prove adultery by direct means, the charge of adultery in a divorce case may be proven by circumstantial evidence which creates more than a mere, suspicion.’ Billington v. Billington, 531 So.2d 924, 924 (Ala.Civ.App.1988). Proof to support the charge of adultery ‘must be sufficiently strong to lead the guarded discretion of a reasonable and just mind to the conclusion of adultery as a necessary inference.’ Boldon v. Boldon, 354 So.2d 275, 276 (Ala.Civ.App.1978).”
Fowler, 636 So.2d at 435.
The husband argues in his brief that he and the wife were separated when he moved to Georgia for work in April 2009. Therefore, he argues, because he did not meet the girlfriend until October 2009, the trial court erred by finding that he had committed adultery.
On the other hand, the wife testified that, although the husband had to move to Georgia for his employment, she did not believe the parties were separated at that time. She further testified that, up until the time she filed the complaint for divorce, she believed that she and the husband were attempting to “work things out.” She presented evidence regarding the husband’s return visits to Alabama as support for her contention that the parties had not separated when the husband moved to Georgia for work. It was up to the trial court, , as the finder -of fact, to. resolve the disputed testimony. See Bias- *956 del v. Blasdel, 65 So.3d 428, 433 (Ala.Civ.App.2010). Based on the evidence presented by the parties and the trial court’s finding that the husband committed adultery, it appears to this court that the trial court found the wife to be more credible than the husband and, thus, that it determined that the parties were not separated until the filing of the divorce complaint in July 2010.
We further conclude that the evidence supports a finding of adultery on the part of the husband. The evidence indicates that the husband began dating the girlfriend in October 2009 and that they began living together in April 2010. Given the evidence in the record on appeal and the presumption of correctness in favor of the trial court’s findings of fact, we cannot say that the husband has demonstrated that the trial court exceeded its discretion by granting a divorce, in part, based on a finding that he had committed adultery.
The husband argued at trial and asserts in his brief on appeal that the wife had also committed adultery and that she had admitted to the adultery in the past. In his brief on appeal, the husband argues incorrectly that the “recrimination doctrine” prevents the trial court from divorcing the parties on the basis of adultery if both parties have committed adultery. The recrimination doctrine applied in Alabama before our state’s law changed to allow no-fault divorces, and it prevented parties from divorcing if each party could establish grounds for divorce against the other. The recrimination doctrine is- explained in Mason v. Mason, 276 Ala. 265, 267, 160 So.2d 881, 882 (1964), as follows: “ ‘The rule is that if the conduct of both parties has been such as to furnish grounds for divorce, neither is entitled to relief, or, as otherwise expressed, if both parties have a right to a divorce, neither of the parties has.’” (Quoting Bryan v. Bryan, 271 Ala. 625, 627, 126 So.2d 484, 485 (1961).) In 1971, our legislature amended the statutes governing grounds for divorce to include “incompatibility of temperament” and “an irretrievable breakdown of the marriage.” § 30-2-l(a)(7) and (9), Ala.Code 1975. Since the adoption in Alabama of law allowing parties to divorce on the basis of incompatibility, the doctrine of recrimination is no longer applicable. Cooper v. Cooper, 57 Ala.App. 674, 680, 331 So.2d 689, 694 (Civ.1976).
Further, the trial court did not find that the wife had committed adultery, and the evidence in the record supports a conclusion that she did not. The wife testified that she had recanted the admission of adultery on the same day she had made the admission and that she had not committed adultery at any time during the marriage.
“This court has ... stated: ‘The testimony of one spouse as to the other spouse’s confession of adultery is, alone, insufficient to warrant a divorce on the grounds of adultery....’ Yates v. Yates, 676 So.2d 365, 366 (Ala.Civ.App.1996); see also § 30-2-3, Ala.Code 1975. Additionally, our supreme court has stated: ‘It is clear under our decisions that confessions of a party in a divorce suit must be corroborated.’ Watson v. Watson, 278 Ala. 425, 428, 178 So.2d 819, 821 (1965) (citing Lunsford v. Lunsford, 232 Ala. 368, 168 So. 188 (1936)). Furthermore, ‘ “the mere admission or confession of adultery on the part of the defendant, without any substantive evidence whatever of the delictum, is not sufficient or proper evidence to authorize a court to dissolve the marital bonds....”’ Watson, 278 Ala. at 428, 178 So.2d at 821 (quoting Hall v. Hall, 93 Fla. 709, 112 So. 622 (1927)) (emphasis added).”
*957 Webb v. Webb, 950 So.2d 322, 325 (Ala.Civ.App.2006).
The husband did not present any evidence of adultery other than the wife’s purported admission of an affair, which the wife stated she quickly recanted. Given the evidence in the record on appeal, we cannot say that the husband has demonstrated that the trial court erred in determining that the wife had not committed adultery.

IV. Alimony, Marital Property, and Attorney Fees

The husband argues that the trial court exceeded its discretion in its division of the marital property and the awards of alimony and attorney fees.
In its judgment, the trial court awarded the wife exclusive title to the marital residence and a Toyota Sequoia automobile. The husband testified that he believed the equity in the marital residence was approximately $300,000. The wife did not provide a valuation for any of the marital property, but she submitted evidence indicating that the marital residence was in need of significant repairs. According to the husband, the Toyota Sequoia that was awarded to the wife was worth approximately $9,000. The husband was awarded various items of personal property from the marital residence; the remaining personal property was awarded to the wife. The husband stated that he believed that the personal property inside the marital residence was worth approximately $150,000, and, he further testified, the personal property he requested was worth approximately 5% of the total value. The husband was also awarded his bank accounts, including his 401 (k) account and his IRA, which had a total value of $89,000.
In challenging the property division on appeal, the husband states that, as part of her award, the wife received a Lexus IS-250 automobile, a Lexus ES-300 automobile, and a second house and a bank account that the wife had inherited from her mother as assets that the wife received in the final judgment. However, the trial court specifically instructed the parties to put the title of the Lexus IS-250 in the daughter’s name.[5] The husband has not argued that the trial court lacked the authority to award the vehicle to the daughter. Also, both parties testified that the Lexus ES-300 was being used by their adult son, and the divorce judgment does not address that vehicle.
The trial court’s final divorce judgment does not address the disposition of the second house or the bank account that the wife had inherited from her mother. The evidence supports a determination that those assets constituted the wife’s separate property that was not part of the marital estate subject to allocation in the divorce action. See Carnes v. Carnes, 82 So.3d 704, 711-12 (Ala.Civ.App.2011) (“‘A party’s “‘separate estate’ is that property over which [he or] she exercises exclusive control and from which the [spouse] ... derives no benefit by reason of the marital relationship.” Gartman v. Gartman, 376 So.2d 711, 713 (Ala.Civ.App.1978).’”; “ ‘The trial judge is granted broad discretion in determining whether property pur *958 chased before the parties’ marriage or received by. gift or inheritance was used “regularly for the common benefit of the parties during the marriage.” See § 30-2-51, Ala.Code 1975.’'” (quoting Nichols v. Nichols, 824 So.2d 797, 802 (Ala.Civ.App. 2001))).
A trial' court is free to consider the conduct of the parties' regarding the cause of the divorce in its division of the marital property. Martin v, Martin, 85 So,3d 414, 421 (Ala.Civ.App.2011) (quoting Boykin v. Boykin, 628 So.2d 949, 952 (Ala.Civ.App.1993)). However, in Martin this court held that the award of the only 'substantial marital asset, the marital residence, to the husband was inequitable, even in light of the wife’s admitted affair. 85 So.3d at 422.
In the present case, it also appears that the marital residence was the only substantial marital asset. Relying on the husband’s assessment of the value of the marital assets, the wife received the marital residence, worth $300,000, the Toyota Sequoia,, worth $9,000, and 95% of the personal property, worth $142,500,[6] for a total of . $451,500. The husband was awarded his retirement accounts, worth $89,000, and 5% of the'personal property, worth $7,500, for a total of $96,500. Thus, the husband was awarded approximately 18% of the value of the marital assets. In addition, the husband was ordered to pay the $803 monthly mortgage payment for the marital residence and the $615 monthly payment on the indebtedness on the daughter’s Lexus IS-250. The tidal court also ordered the husband to pay the wife periodic alimony of $3,500 per month. It appears that the wife has a separate estate in addition to the assets she was awarded under the final judgment.
" ‘An award of alimony and the division of marital property are considered together and are matters within the discretion of the trial court. Carter v. Carter, 934 So.2d 406 (Ala.Civ.App.2005) (citing Ex parte Durbin, 818 So.2d 404, 408 (Ala.2001)). Because those matters are interrelated, the. entire judgment must be considered in determining whether the trial court exceeded its discretion as to either issue. See [Harmon v.] Harmon, [928 So.2d 295 (Ala.Civ.App.2005) ]. Furthermore, a property division does not have to be equal, but it must be equitable, J.H.F. v. P.S.F., 835 So.2d 1024 (Ala.Civ.App.2002), and it must be “supported by the particular facts of the case,” Ex parte Elliott, 782 So.2d 308, 311 (Ala.2000). The determination of what is equitable is a matter of discretion for the trial court. See Carter, supra.’
“Clements v. Clements, 990 So.2d 383, 390 (Ala.Civ.App.2007). The trial court should consider several factors when determining a party’s need for alimony and when dividing marital property, including ‘ “the length of the marriage, the age and health of the parties, the future employment prospects of the parties, the source, value,' and type of property owned, and the standard of living to which the parties have become accustomed during the marriage.” ’ Ex parte Elliott, 782 So.2d 308, 311 (Ala.2000) (quoting Nowell v. Nowell, 474 So.2d 1128, 1129 (Ala.Civ.App.1985)).”
Grocholski v. Grocholski, 89 So.3d 123, 129 (Ala.Civ.App.2011).
This court has carefully considered the property division and alimony award, and we conclude that, even in light of the husband’s adultery, the. property division in *959 this case is inequitable. Accordingly, we reverse the judgment as to this issue and remand the case for the ' trial. court to reconsider the issues of the property division and the alimony award. However, we note that the record supports a determination that the trial court did not find all the husband’s testimony to be credible. Also, the trial court determined that the husband’s adultery caused the breakdown of the parties’ 28-year marriage, and there is a significant disparity in the parties’ respective earning potentials. Those factors, together with other evidence, may still be considered by the trial court in redetermining the property division and alimony award on remand.
The husband also argues on appeal that the trial court exceeded its discretion by awarding the wife $10,750 as an attorney fee.
“ ‘Whether to award an attorney fee in a domestic relations case is within the sound discretion of the trial court and, absent an abuse of that discretion, its ruling on that question will not be reversed. Thompson v. Thompson, 650 So.2d 928 (Ala.Civ.App.1994). “Factors to be considered by the trial court when awarding such fees include the financial circumstances of the.parties, the parties’ conduct, the results of the litigation, and, where appropriate, the trial court’s knowledge and experience as to the value of the services performed by the attorney.” Figures v. Figures, 624 So.2d 188, 191 (Ala.Civ.App.1993). Additionally, a trial court is presumed to have knowledge from'which it may set a reasonable attorney fee even when there is no evidence as to the reasonableness of the attorney fee. Taylor v. Taylor, 486 So.2d 1294 (Ala. Civ.App.1986).’
“Glover v. Glover, 678 So.2d 174, 176 (Ala.Civ.App.1996).”
Frazier v. Curry, 104 So.3d 220, 228 (Ala.Civ.App.2012).
In this case, the financial circumstances of the parties as well as the results of the litigation are undetermined because we have reversed the trial court’s property division and alimony award in their entirety and have remanded the case for further consideration. Accordingly, we reverse the attorney-fee award and direct the trial court to further consider that issue on remand.
V., Visitation
In its judgment, the trial court granted the wife sole physical custody of the youngest son “subject to the right of visitation for the [the husband], at the discretion of the [youngest son].” The husband argues that the trial court exceeded its discretion by granting visitation at the discretion of the youngest son. “At the outset, we note that the determination of visitation rights for the noncustodial parent rests within the sound discretion of the trial court and that its ruling on that matter will not be reversed on appeal absent an abuse of that discretion. Ladewig v. Moxley, 589 So.2d 738 (Ala.Civ.App. 1991).” Bryant v. Bryant, 739 So.2d 53, 56 (Ala.Civ.App.1999).
The youngest son turned 16 years old shortly after the conclusion of the trial. The husband testified at the trial that he believed the parties’ children had been alienated from him. According to the husband, he previously had had a good relationship with the youngest son. He testified that before he moved to Georgia he and the youngest son would play baseball together almost every day and that after he moved to Georgia he and the youngest son talked on the telephone every day. The husband further testified that the telephone calls abruptly stopped after the wife *960 discovered that the girlfriend was living with the husband in Georgia. Additionally, the husband testified that the youngest son and the daughter had new cellular-telephone numbers and that the new numbers were never provided to him.
The transcript from the trial indicates that the trial court heard testimony from the youngest son in camera that was not included in the transcript. Also, the trial court entered a TRO on October 13, 2011, which ordered the husband to have no contact with the youngest son.
This court has held that
“ ‘[t]he natural and proper relationship of a parent and child should be nurtured, encouraged and protected by the court after the breakdown of a marriage. No unreasonable impediment should be raised —
“ ‘, The responsibility for the cultivation of that relationship should rightfully be upon the father, and the mother, not upon the child. To so place it is to probably destroy it, not protect it.’
“Moore v. Moore, 57 Ala.App. 735, 331 So.2d 742, 744 (Ala.Civ.App.1976); see also Parker v. Parker, 269 Ala. 299, 303, 112 So.2d 467, 471 (1959) (reversing a judgment placing visitation at the discretion of the child and stating that ‘a decision as to what is best for the child’ should be made by the trial court rather than the child).”
H.H.J. v. K.T.J., 114 So.3d 36, 44 (Ala.Civ.App.2012).
In Parker v. Parker, 269 Ala. 299, 303, 112 So.2d 467, 471 (1959), our supreme court reversed the trial court’s judgment when it had failed in its duty to determine the best interest of the child.
“It seems apparent that the change in the decree is grounded essentially on the desires of the child, a boy eleven years old. Moreover, the decree, in giving the child the sole right to determine, for at least half of each month, which parent should have his custody is geared to his variable desires in the future. There seems to be little need to catalogue the reasons why such a provision is inappropriate. It is sufficient to say that it places on this young child the exclusive responsibility of determining, from time to time, which parent should have custody. Thus, a decision as to what is best for the child is made by the child himself and not by the court.”
Parker v. Parker, 269 Ala. at 303, 112 So.2d at 471.
Also instructive to this court are our decisions routinely reversing judgments when the control of visitation has been vested entirely in one person or one couple. See, e.g., Bearden v. Murphy, 120 So.3d 1096, 1098 (Ala.Civ.App.2013) (“[Ljeaving visitation to the sole discretion of the custodial parent ... require[s] reversal.”); and Bryant v. Bryant, 739 So.2d at 56-57 (reversing a visitation provision that allowed the mother to determine the father’s visitation).
Although we are not unsympathetic to the youngest son’s feelings, we hold that the trial court erred in vesting total discretion regarding a noncustodial parent’s visitation in one person, and, in this case, that person is a child who cannot be expected to comprehend the legal, social, financial, or emotional implications of maintaining or of severing his relationship with his father. See Moore v. Moore, 57 Ala.App. 735, 737, 331 So.2d 742, 744 (Civ.1976) (reversing an award allowing a father visitation at the discretion of the children on the basis that the award was “manifestly unjust” under the facts). Therefore, we reverse the trial court’s judgment insofar as it relates to visitation, and we remand the case with instructions for the trial court to enter a *961 visitation order that fashions a visitation schedule that facilitates a relationship between the husband and the youngest son and that serves the best interests of the youngest son. See DuBois v. DuBois, 714 So.2d 308, 309 (Ala.Civ.App.1998) (“The primary consideration in setting visitation rights is the best interest of the child.”).

VI. Child Support and the Vehicles for the Youngest Son

A. Child Support

The husband argues that the trial court erred in determining his child-support obligation. The final judgment contains no child-support forms indicating the manner in which the trial court reached its child-support determination.[7]
“‘“This court has held that if the record does not reflect compliance with Rule 32(E) .,. (which requires the filing of ‘Child Support Obligation Income Statement/Affidavit’ forms (Forms CS-41) and a ‘Child Support Guidelines’ form (Form CS-42)), and if child support is made an issue on appeal, this court will remand (or reverse and remand) for compliance with the rule. See Martin u Martin, 637 So.2d 901, 903 (Ala.Civ.App.1994). On the other hand, this court has affirmed child-support awards when, despite the absence of the required forms, we could discern from the appellate record what figures the trial court used in computing the child-support obligation. See, e.g., Dunn v. Dunn, 891 So.2d 891, 896 (Ala.Civ.App.2004); Rimpf v. Campbell, 853 So.2d 957, 959 (Ala.Civ.App.2002); and Dismukes v. Dorsey, 686 So.2d 298, 301 (Ala.Civ.App.1996). Nevertheless, without the child-support-guidelines forms, it is sometimes impossible for an appellate court to determine from the record whether the trial court correctly applied the guidelines in establishing or modifying a child-support obligation. See Horwitz v. Horwitz, 739 So.2d 1118, 1120 (Ala.Civ.App.1999).” ’
“Harris v. Harris, 59 So.3d 731, 736-37 (Ala.Civ.App.2010) (quoting Hayes v. Hayes, 949 So.2d 150, 154 (Ala.Civ.App.2006)).”
Wellborn v. Wellborn, 100 So.3d 1122, 1126 (Ala.Civ.App.2012).
This court is unable to determine from the record the manner in which the trial court determined the amount of the parties’ gross incomes. The trial court is not bound by the income figures advanced by the parties, and it has discretion in determining a parent’s gross income. However, “‘[t]his court cannot affirm a child-support order if it has to guess at what facts the trial court found in order to enter the support order it entered....’” Willis v. Willis, 45 So.3d 347, 349 (Ala.Civ.App.2010) (quoting Mosley v. Mosley, 747 So.2d 894, 898 (Ala.Civ.App.1999)). There *962 fore, we reverse the judgment establishing the child-support award and remand the case to the trial court to redetermine the husband’s child-support obligation in compliance with the Rule 32, Ala. R. Jud. Admin., child-support guidelines and this opinion.
B, The Vehicles for the Youngest Son
The husband also contends that the trial court erred by ordering him to purchase a vehicle for the youngest son when the youngest son turned 16 and another vehicle for the youngest son when he graduates from high school. The final judgment provided that the vehicles were to be “consistent with the vehiclets] provided to the parties’ other two children.” The husband does not argue that the trial court lacks jurisdiction to order him to pay for a vehicle for the child as a component of child support. Rather, the husband cites to A.B. v, J.B., 40 So.3d 723 (Ala.Civ.App.2009), in which this court reversed a trial court’s judgment ordering the noncustodial parent, to pay one-half the expenses for. the minor child’s extracurricular activities. In A,B„ this court held:
“Rule 32(A), Ala. R. Jud. Admin., provides that
“‘[t]here shall be a rebuttable presumption, in any judicial or administrative proceeding for the establishment or modification of child support, that the amount of the award that would result from the application of these guidelines is the correct amount of child support to be awarded. A written finding on the record indicating that the application of the guidelines would be. unjust or inappropriate .shall be sufficient to rebut the presumption if the finding is based upon:
“‘(i) A fair, written agreement between the parties establishing a different amount and stating the reasons therefor; or
“‘(ii) A determination by the court, based upon evidence presented in court and stating the reasons therefor, that application of the guidelines would be manifestly unjust or inequitable.’
“Thus, although the amount of child support established by the guidelines creates a presumption as to the correct amount of child support to be awarded, that presumption is rebuttable, and, under certain circumstances, a trial court has the discretion to award child support outside the guidelines.
“Additionally, Rule 32(C)(4), Ala. R. Jud. Admin., provides:
“ ‘In Addition to the recommended child-support order, the court may make additional awards for extraordinary medical, dental, and educational expenses if (i) the parties have in writing agreed to these awards or (ii) the court, upon reviewing the evidence, determines that these awards are in the best interest of the'children and states its reasons for making these additional awards.’
“In this case, however, no evidence was presented to rebut the presumption created- by the guidelines, and the trial court’s final judgment failed to' indicate that application of the guidelines would be manifestly unjust or inequitable. The final judgment also failed to include the language necessary to support an award under Rule 32(C)(4). Therefore, requiring the [former] wife to pay one-half of [the child] ⅛ extracurricular expenses is unsupported by the record and was error.”
A.B., 40 So.3d at 733.
The wife testified at the trial that it was her belief that, because she and the husband" had purchased vehicles while they *963 were married for their two older children, the husband should be required to purchase comparable vehicles for the youngest son, a belief that was. apparently shared by the trial court and incorporated into its judgment. However, we cannot conclude that such testimony amounts to evidence that would indicate that application of the guidelines would be manifestly unjust or inequitable. Therefore, we reverse that portion of the trial court’s judgment ordering the husband to purchase vehicles for the youngest son.

VII. Postminority Educational Support

In its final judgment, the trial court ordered, among other things, that each party pay certain collegé expenses for the daughter. In pertinent part, the husband was ordered to pay for the daughter’s tuition, books, room, and vehicle-related expenses. Before this court reaches the husband’s arguments on this issue, wé must note a recent development in our state’s law concerning postminority support. In October 2013, while this appeal was pending in this court, our supreme court released Ex parte Christopher, 145 So.3d 60 (Ala.2013). In Christopher, our supreme court expressly overruled Ex parte Bayliss, 550 So.2d' 986 (Ala.1989), the seminal case in which that court had interpreted § 30-3-1, Ala.Code 1975, as authorizing a trial court in a divorce proceeding to order a noncustodial parent to contribute to college expenses for children past the age of majority. In Christopher, our supreme court held that “the child-custody statute does not authorize a court in a divorce action to require a noncustodial parent to pay educational support for children over the age of 19.” 145 So.3d at 72. The decision in Christopher was not made retroactive and did not make existing orders requiring the payment of post-minority educational support void.
“Because many litigants, have relied upon the holding in Bayliss to sue for and to collect support from noncustodial parents for college expenses, our decision in the instant case' will not disturb final postminority-educational-support orders entered before the date of this decision.”
Christopher, 145 So.3d at 71. Instead, our supreme court held'that the decision would apply prospectively:
“Although [this] decision does not affect final orders of postminority educational support already entered, our overruling of Bayliss is applicable to all future cases. Further, this decision also applies to current eases where no final postminority-support order has been entered or where an appeal from a postmi-nority-support order is still pending.”
Id. at 72.
In Christopher, the parent who had been ordered to pay postminority educational support for a child had challenged the constitutionality of the holding in Bayliss in the trial court. Because the issue had been properly raised in the trial court, putting the parent who' had requested postminority support “on notice that [the paying parent] was challenging the ’trial court’s authority to' order her to pay post-minority educational support,” 145 So.3d at 72, our supreme court applied the holding to the parties before it. By doing so, the supreme court noted that this provided ““‘an incentive for litigants to challenge existing rules of law that are in need of reform.” ’ ” Christopher, 145 So.3d at 72 (quoting Hosea O. Weaver & Sons, Inc. v. Towner, 663 So.2d 892, 899 (Ala.1995), quoting in turn Prospective Application of Judicial Decisions, 33 Ala. L.Rev. 463, 473 (1982)), Because the holding applied to the parties involved in the decision as well as future cases, our supreme court described the holding as having “quasi-pro *964 spective” application. Christopher, 145 So.3d at 72.
In the present case, the husband protested the amount of and necessity for postminority educational support in the trial court. However, the husband first raised a challenge to the authority of the trial court to award postminority support on appeal.[8] The husband’s failure to raise before the trial court the issue of the trial court’s authority to order postminority support, or the constitutionality of such an award, is understandable because Christopher was not decided until more than a year after the entry of the judgment ordering postminority support. However, challenges to the interpretation of a statute, or challenges to the constitutionality of a law or decision (however Christopher is viewed), must first be raised in the trial court and cannot be raised for the first time on appeal:
“It is well settled that an issue cannot be raised for the first time on appeal.
“‘The rule is well settled that a constitutional issue must be raised at the trial level and that the trial court must be given an opportunity to rule on the issue, or some objection must be made to the failure of the court to issue a ruling, in order to properly preserve that issue for appellate review. This Court succinctly stated this rule as follows:
“ ‘ “In order for an appellate court to review a constitutional issue, that issue must have been raised by the appellant and presented to and reviewed by the trial court. Additionally, in order to challenge the constitutionality of a statute, an appellant must identify and make specific arguments regarding what specific rights it claims have been violated.”
“ ‘Alabama Power Co. v. Turner, 575 So.2d 551 (Ala.1991) (citations omitted).’
“Cooley v. Knapp, 607 So.2d 146, 148 (Ala.1992).”
1568 Montgomery Highway, Inc. v. City of Hoover, 45 So.3d 319, 344-45 (Ala.2010).
In this case, the husband did not place the wife on notice that he was challenging the authority of the trial court to enter a postminority-educational-support award in the trial court. Accordingly, the wife had no opportunity to assert opposing arguments, and the trial court had no opportunity to consider or rule on the issue. Applying Christopher to vacate the post-minority-educational-support award in this case would cause an unanticipated, unrequested result, because the husband did not ‘““challenge [an] existing rule[] of law ... in need of reform.” ’ ” Christopher, 145 So.3d at 72. Based on the issues framed within the trial court, parties determine what facts should be discovered, decide what evidence should be presented and the manner of its presentation, and decide whether to resolve all or a portion *965 of the dispute without a trial. Confidence in the judicial system is promoted when issues are required to be fully developed and presented to the tribunal conducting the litigation process and determining the facts and the application of law to those facts. Accordingly, we interpret the instruction from the supreme court to apply Christopher in cases still on appeal to those instances in which the issue concerning the trial court’s authority to grant such support was properly raised in the trial court. That issue was not raised in this case, and, therefore, we conclude that Christopher does not apply to this action.
The husband argues that the trial court’s judgment ordering him to pay post-minority educational support for the daughter creates an undue burden. The husband cites Thrasher v. Wilburn, 574 So.2d 839, 841 (Ala.Civ.App.1990), in which this court held that “[a] parent has a legal duty to provide or aid in providing a college education for his/her child if the child demonstrates the ability and willingness to attain a higher education and the parent has sufficient estate, earning capacity, or income to provide financial assistance without undue hardship to himself.” (Emphasis added.) The final judgment requires the husband to pay the vast majority of the daughter’s college expenses.[9]
We recognize that the husband’s income level indicates that he is capable of contributing to the daughter’s education costs. However, given this court’s holding in this case with regard to the issues of the property division and the alimony award, we reverse the trial court’s award of postmi-nority educational support. In so holding, we note, however, as we noted in our discussion on the issue of the award of child support, that it is possible that the trial court considered the husband to be underemployed. Recently, in Jacklin v. Austin, 142 So.3d 579 (Ala.Civ.App.2012), this court affirmed an award of postminority educational support, noting that, in that case, although the mother had no significant estate or income, there was evidence to support the conclusion that the mother was capable of working. This court concluded that, “[biased upon evidence of the mother’s earning capacity, ... we cannot conclude that the trial court erred in determining that the mother could contribute to the collegiate costs of the parties’ two older children without undue hardship.” 142 So.3d at 582. Accordingly, we reverse the postminority-educational-support award and remand the case for the trial court to reconsider the award of postmi-nority educational support in light of this opinion.

VIII. Pendente Lite Modification and Contempt

The husband also argues that the trial court erred by refusing to “substantially reduce” the pendente lite support obligations imposed by the April 29, 2011, order. The husband further contends that the trial court erred in holding him in contempt for failing to pay the pendente lite support obligations imposed by that order. In moving the trial court to lower his pendente lite support obligations, the husband requested only that the trial court “[rjecalculate child support and any alimony obligation of the [husband] consistent with the Rule 32[, Ala. R. Jud. Admin., child-support] guidelines and equity.” The husband also asked generally for “any other relief’ to which he might be entitled, but he did not request a reduction or elimination of the other pendente lite sup *966 port obligations imposed in the July 30, 2010,. pendente lite support order.
Thé trial court’s refusal to further reduce- the' husband’s pendente lite child-support obligation and to reduce his alimony obligation, the only pendente lite support obligations mentioned in'the'husband’s March 15, 2011, request for a modification of his pendente lite support obligations, are not reviewable in this appeal of the final divorce judgment.
A pendente lite order is replaced. by the entry of a final judgment. Reid v. Reid, 897 So.2d 349, 355 (Ala.Civ.App.2004) (“A pendente lite order is one entered during the pendency of litigation, and such an order is generally replaced by a final judgment.”). Thus, a pendente lite order is not made final by the entry of a final judgment such that it may be appealed as a part of the final judgment. Rather, the review of a pendente lite support order “is by way of mandamus, inasmuch as it is not a final [judgment].” Sizemore v. Sizemore, 423 So.2d 239, 241 (Ala.Civ.App.1982). See also Ashbee v. Ashbee, 431 So.2d 1312, 1313 (Ala.Civ.App.1983) (“As to the wife’s claim that alimony pendente lite should have been awarded, we note that the proper" method of seeking appellate review of such an action on the part of the trial court is through a petition for a writ of mandamus.... Since this issue has been raised'improperly, we are unable to consider it [in an appeal of a final divorce judgment].”) (citing Sizemore v. Sizemore, supra). Accordingly, the husband may not raise issues pertaining to the propriety of the April 29, 2011, pendente lite support order in this appeal of the final divorce judgment.
We note that, on application for rehearing, thé husband argues that he could not have filed a petition for a writ of mandamus pertaining to the April 29, 2011, order because, he says, the trial court did not rule on every “issue” and, instead, reserved ruling on some issues. Although we agree that the trial court reserved consideration of at least two issues, we canhot agree with the husband that his request for relief from his alimony obligation was a separate issue on which the trial court failed to rule. Rather; the parties placed before the trial court at the April 29, 2011, hearing the issues of contempt, sanctions for an allegéd discovery abuse, the filing of the parties’ 2010 income-tax returns, whether the parties should submit to mediation, and whether the husband should be granted relief from his pendente lite support obligations. The trial court ruled on several of those issues in its April 29, 2011, order. With regard to the husband’s request for relief from his pendente lite support obligations, the trial court addressed that issue by reducing the husband’s child-support obligation; the other aspects of the husband’s request seeking relief from his pendente lite support obligations were implicitly denied. See Shewbart v. Shew-bart, 64 So.3d 1080- (Ala.Civ.App.2010). The remaining pending issues not addressed in that-April'29, 2011, order were those in which the parties sought sanctions against each other. Accordingly, we cannot agree with the husband’s argument on application for rehearing that the trial court reserved. for later consideration whether to reduce his pendente lite alimony obligation. Even assuming, however, that that part of the husband’s request for relief from his pendente lite support obligations pertaining to alimony was reviewable in this appéal, we conclude that the husband failed to show error for the same reasons set forth below in our rejection of the husband’s argument that the trial court erred in finding the husband in contempt for his failure to pay those pendente lite support obligations.
*967 The husband also argues that the trial court erred in finding him in contempt in its final judgment for his failure to comply with the April 29, 2011, pendente lite support order. In its final judgment, the trial court found the husband in contempt for his failure to pay pendente lite alimony to the wife and pen-dente lite postminority educational support for the daughter. The husband argues that after March 2011, when he accepted employment at a reduced income level, he no longer had the ability to comply with the pendente lite support orders.
“The inability to pay court-ordered alimony is a defense to contempt. Sexton v Sexton, 935 So.2d 454, 460 (Ala.Civ.App.2006). ‘ “ “When the accused presents evidence that he is unable to pay the ordered amount, the burden o[f] proof is on the complainant to prove beyond a reasonable doubt that he can comply.”” 935 So.2d at 460 (quoting Sealy v. D’Amico, 789 So.2d 863, 866 (Ala.Civ.App.2000) (quoting. in turn Waits v. Watts, 706 So.2d 749, 751 (Ala.Civ.App.1997))). However, the determination of whether a party is in contempt is within the discretion of the trial court, and, unless the record reyeals an ‘ “abuse of that discretion or unless the judgment of the trial court is unsupported by the evidence so as to be plainly and palpably wrong, this court will affirm.” ’ Nave v. Nave, 942 So.2d [372,] 377 [ (Ala.Civ.App.2005) ] (quoting Stack v. Stack, 646 So.2d 51, 56 (Ala.Civ.App.1994)). Furthermore, in Stamm [v. Stamm, 922 So.2d 920 (Ala.Civ.App. 2004)], we held that a ‘trial court’s determination that a party’s failure to comply with a judgment is willful and not due to an inability to comply, when based on ore tenus evidence, will be affirmed if it is supported by one view of that evidence.’ 922 So.2d [920] at 924 [ (Ala.Civ.App.2004) ].”
Clements v. Clements, 990 So.2d 383, 396—97 (Ala.Civ.App.2007).
After the April' 29, 2011, modification of the earlier, July 30, 2010, pendente lite support order, the husband was required to pay the’ monthly amounts of $1,442 for Child support, $4,100 for alimony, and $1,845 for the house and automobile payments; these obligations totaled $7,387 monthly. It is undisputed that in March 2011 the husband voluntarily accepted a significant reduction in his income at a time when he knew he had significant financial obligations to the wife and his children.
In addition, the husband testified that, at the same time he accepted the employment that resulted in the significant reduction in his income, he became aware that he had to pay approximately $50,000 in past-due federal and state income tax; we note that, in questioning the wife, the husband’s attorney asked about the parties’ attempts to budget for such a tax payment. The husband paid that tax obligation in a lump sum in April 2011. The husband stated that, because of the potential for penalties, he had. not inquired whether he might have arranged an installment payment plan for that debt. However, he stated that, because of that lump-sum payment and the reduction in his monthly income, he could no longer, afford to make his .pendente lite support payments and had no other assets from which to pay those obligations.
The trial court was not required to believe the husband’s explanation of the reasons for the significant decrease in his income or his failure to meet his pendente lite support obligations. This is particularly true when, as here, the record supports a conclusion that several aspects of the husband’s testimony were found by the trial court not to be credible. “It is the *968 province of the trial courts to estimate the credibility of witnesses, and if the trial court concludes that a witness was willfully untruthful, that court may disregard any or all of that witness’s testimony.” Summers v. Summers, 58 So.3d 184, 188 (Ala.Civ.App.2010). See also Bunn v. Bunn, 628 So,2d 695, 697 (Ala.Civ.App.1993) (“[T]he trial court may disbelieve and disregard portions of testimony and should accept only that testimony it considers worthy of belief.”).
The record contains ample evidence from which the trial court could reasonably question the husband’s credibility. Given the presumption in favor of the trial court’s determinations on questions of fact, such as whether a party is in contempt, we affirm the contempt finding pertaining to the husband’s failure to pay his pendente lite support obligations.

Conclusion

Based upon the foregoing, we affirm the trial court’s divorce judgment in part, reverse it in part, and remand this case to the trial court to enter a judgment consistent with the reasoning of this opinion. We dismiss the husband’s appeal from the trial court’s January 8, 2013, contempt order.
2120101 — APPLICATION FOR REHEARING OVERRULED; OPINION OF APRIL 18, 2014, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and MOORE and DONALDSON, JJ., concur.
THOMAS, J., concurs in part and concurs in the result in part, with writing.
PITTMAN, J., concurs in part, concurs in the result in part, and dissents in part, with writing.
2120390 — APPLICATION FOR REHEARING IN CASE NO. 2120101 OVERRULED; OPINION OF APRIL 18, 2014, WITHDRAWN; OPINION SUBSTITUTED; APPEAL DISMISSED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, THOMAS, MOORE, and DONALDSON, JJ., concur.

. The girlfriend testified that, although she and the husband were not yet married, she had legally changed her last name to Morgan.

. The wife referred to the money in the bank account as her inheritance. The wife stated that her name had been placed on the account while her mother was still alive because her mother had been unable to manage her own financial affairs because of her health.

. It appears from the daughter’s testimony that a portion of the tuition for the fall 2011 semester was deferred to a later date, which resulted in a deferment fee.

. The wife provided testimony indicating that, during the pendency of the divorce action, the husband had used a Lexus automobile the parties had purchased for the daughter's use. The wife testified that the husband returned that vehicle in poor condition; she described the condition of the vehicle as follows; "Water standing in the floorboard, in the back seat. The ceiling was falling down. The back seat leather was severely damaged and had split.” The husband disputed that testimony. It is not clear from the record whether that is the same vehicle referred to in the divorce judgment and ordered to be titled in the daughter’s name.

. The husband testified that the. personal property was worth approximately $150,000 and that he was asking for property valued at approximately 5% of that amount.

. The husband “speculates” in his brief submitted to this court that the trial court might have used an undated CS-42 form in determining child support, and he argues that each of the gross-income amounts reflected for the husband and the wife on that form are not supported by the evidence in the record. The CS-42 form to which the husband refers results in a different child-support determination than that reached by the trial court in its final judgment. The amount of child support reflected on that CS-42 form is the amount to which the trial court reduced the husband's pendente lite child-support obligation in its April 29, 2011, order. Because the CS-42 form to which the husband refers in his appellate brief does not contain the child-support calculation performed by the trial court in reaching its final judgment, we do not address the husband’s arguments concerning the trial court’s purported determination of the parties’ gross incomes as reflected on that form.

. The supreme court's decision in Ex parte Christopher was released on October 4, '2013. The husband filed his notice of appeal on October 30, 2012. However, because of a request for a stay and various extensions granted to the trial court to complete the record on appeal, the husband’s original appellate brief was filed in this court on September 12, 2013. The husband cited and argued Christopher in his reply brief filed in this court on November 12, 2013. Generally, an appellate court may not consider an argument not asserted in an initial brief but instead raised for the first time in a reply brief. Brown v. St. Vincent’s Hosp., 899 So,2d 227, 234 (Ala.2004). However, because of the unusual circumstances in this case involving a change in the law in the period after the appellant's initial brief was due but before the due date of the reply brief, we will address the husband’s argument on this issue.

. The wife was ordered to pay for clothing, gasoline, and sorority expenses for the daughter while the daughter attends college.